Derek Jerome SINGLETON et al.,
Plaintiffs-Appellants,

v.

JACKSON MUNICIPAL SEPARATE
SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 29226.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1970.

Supplemental Order Aug. 25, 1970.

Fred L. Banks, Jr., Melvyn R. Leventhal, Reuben V. Anderson, John A. Nichols, Jackson, Miss., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Jonathan Shapiro, New York City, for plaintiffs-appellants.

Robert C. Cannada, Thomas H. Watkins, Jackson, Miss., for defendants-appellees.

Jerris Leonard, Asst. Atty. Gen., David D. Gregory, Atty., Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., amicus curiae.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

PER CURIAM:

Here we review the District Court's order imposing a plan for a unitary school system for the elementary grades in the Jackson Municipal Separate School System. This plan was adopted pursuant to our mandate in *Singleton IV*, Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 426 F.2d 1364.[1]

That mandate required the District Court to reconsider the plan (adopted in January 1970) for the system at the elementary level. The District Court appointed a Bi-Racial Committee also pursuant to that mandate. And that Committee[2] and HEW proposed new plans.

---

1. With the intervening order for the secondary level of July 20, 1970, Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 430 F.2d 368 [As *Singleton V*, the current one becomes *Singleton VI*].

2. The Bi-Racial Committee is composed of 12 persons, 6 white, who were suggested by the School Board, and 6 Negro, who were suggested by Plaintiffs. Its proposal was a result of extensive effort by people with little expertise in this field, practically no assistance for staff, and no

funds. Its work did, however, represent a very commendable effort and a contribution to this community problem.

This experience suggests that for the problems posed by our reversal and remand the District Court should enlist the cooperation of both HEW and the School Board in supplying one or more liaison representatives to the Committee. With this professional staff-like assistance this will enable it to be directly involved in the essential exploratory activities leading to recommendations to the District Court.

The School Board offered no new plan, but did support the Bi-Racial Committee's proposal. Plaintiffs did not propose a new plan, but did suggest substantial modifications to the January 1970 plan put forward by HEW.[3]

Under the stringent time limitations imposed by Alexander v. Holmes County School System, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19; Singleton III, Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 419 F.2d 1211, and Singleton IV, the District Court held an evidentiary hearing[4] on June 8, 1970, and on June 15, 1970 it ordered the plan proposed by the Bi-Racial Committee[5] to be implemented.[6]

We find the results to be unacceptable. Under this plan approximately 70% of the Negro elementary students will be in all (or substantially all) Negro elementary schools. In fact the 70% figure is an understatement for Bradley and Dawson are not included in the schools that are substantially all Negro. The integration in those schools is confined to only two grades. See note 5, *supra*, items 3 and 8. We have to be particularly sensitive to this because the zones for some substantially segregated sceondary schools cover the same areas as are covered by the all Negro elementary school zones. And some students will likely have an education in predominately Negro schools throughout their school life. This is especially true for those students attending Blackburn Junior High and Lanier High School. See charts in *Singleton V, Singleton IV;* Davis v. Board of School Commissioners of Mobile County, 5 Cir., 1970, 430 F.2d 883; Mannings v. Board of Public Instruction of Hillsborough County, 5 Cir., 1970, 427 F.2d 874; Bradley v. Board of Public Instruction of Pinellas County, 5 Cir., 1970, 431 F.2d 1377.

3. Hereafter all references to the "HEW Plan" will be to the June HEW unless otherwise specifically stated.

4. On the hearing the District Court did not allow the Plaintiffs to make any testimonial inquiry into the considerations taken into account in the preparation of the Bi-Racial Committee's plan. It is not necessary for us to categorize this as "error" especially since under our mandated time schedules the hearings themselves often must be compressed. But in the full factual development of justifications required on remand, we think the proposals and any modifications should be explored as fully as needed to determine strengths and weaknesses, etc.

5. The results under this plan are:

*Under District Court Approved Plan*

| Schools | | Negro | White | Percentage* |
|---|---|---|---|---|
| 1. Baker | | 4 | 323 | 99% |
| 2. Boyd | | 171 | 340 | 67% |
| 3. Bradley | | 341 | 92*** | 79% |
| 4. Brown | | 658 | 0 | 100% |
| 5. Casey | | 30 | 451 | 94% |
| 6. Clausell | | 57 | 166 | 75% |
| 7. Davis | | 303 | 52 | 85% |
| 8. Dawson | | 420 | 109*** | 79% |
| 9. Duling | | 122 | 118 | 51% |
| 10. French | | 142 | 318 | 69% |
| 11. Galloway | | 385 | 162 | 70% |
| 12. George | | 83 | 91 | 52% |
| 13. Green | | 123 | 484 | 80% |
| 14. Isable | 1-4** | 517 | 0 | 100% |
| 15. Johnson | | 862 | 50 | 94% |
| 16. Jones | | 1,234 | 10 | 99% |
| 17. Key | | 50** | 480 | 90% |
| 18. Lake | | 50 | 615 | 92% |
| 19. Lee | | 51** | 371 | 88% |

*Under District Court Approved Plan*

| Schools | Negro | White | Percentage* |
|---|---|---|---|
| 20. Lester | 138** | 228 | 62% |
| 21. McLeod | 51 | 665 | 93% |
| 22. McWillie | 38 | 495 | 93% |
| 23. Marshall | 55** | 573 | 91% |
| 23a. Martin | 206 | 17 | 92% |
| 24. Morrison | 472 | 78 | 86% |
| 25. Poindexter | 134 | 167 | 55% |
| 26. Power | 39 | 366 | 90% |
| 27. Raines | 81 | 494 | 86% |
| 28. Reynolds | 982 | 0 | 100% |
| 28a. Robertson | 320 | 0 | 100% |
| 29. Smith | 1,022 | 0 | 100% |
| 30. Spann | 47 | 497 | 91% |
| 31. Sykes | 51** | 452 | 90% |
| 32. Walton | 845 | 80 | 91% |
| 33. Watkins | 129 | 270 | 68% |
| 34. Whitfield | 159 | 230 | 59% |
| 35. Wilkins | 116 | 373 | 76% |
| TOTAL | 10,488 | 9,217 | |

* The percentage figures here and elsewhere reflect the proportion that the children of the majority race bear to the total student enrollment. Percentages are listed here strictly as informational aids. We expressly disclaim any intimation that racial balance is the standard by which we determine the acceptability of various desegregation plans.

** This plan provides for the reassignment of blacks attending Isuble 5 and 6, "more or less" equally among the formerly white Lester, Key, Marshall, Sykes and Lee Schools. Therefore the desegregation reflected in those formerly white schools is limited to grades 5 and 6 only.

*** Whites assigned to these schools were assigned to Watkins under previous court order; and since Watkins serves grades 5-6 only, these grades are integrated in grades 5-6 only.

[A3028]

6. The District did modify the Bi-Racial Committee's plan slightly by pairing Clausell and Wilkins Schools and closing Barr School and assigning those students to Poindexter.

The HEW plan [7] was a substantial improvement over the plan approved by the District Court. It reduced the number of all Negro schools from 9 to 4 and the number of Negroes in which they constituted 95% or more of the student body to 2,731. Plaintiffs' modifications [8] of the HEW plan were an even greater improvement. There were to be no all Negro schools under that plan.

Both of these plans are based on a type of zoning that divides the District into large Areas, 10 in both plans, and then establishes a separate grade structure in the Area. For example, under the HEW plan, Area II, which is about 4 miles across, contains four schools in which grades 1–4 are presented and one large school in which grades 5–6 are presented. (See note 5, lines 14, 17, 18, 20, 23, *supra*). There was much discussion in the briefs that under this type of "clustering" it will be necessary for the School District to provide intra-city transportation for the plans to be effective. But we do not reach this since the changes we mandate persuade us that there is a variety of ways to improve the result.

We repeat that the result below is not acceptable. When making this determination in many recent cases, we have often specified the full form that the desegregation plan is to take. However we do not believe this is the wise course here since the record is inadequate. Consequently, a remand will be required.

7. The results under the HEW Plan are:*

| | Schools | Grades | Under HEW Plan Negro | White | Percentage** |
|---|---|---|---|---|---|
| 1. | Baker | 1-6 | 153 | 307 | 67% |
| 2. | Boyd | 5-6 | 360 | 269 | 57% |
| 3. | Bradley | 1-6 | 174 | 203 | 54% |
| 4. | Brown | 3-6 | 530 | 244 | 68% |
| 5. | Casey | 1-4 | 10 | 362 | 97% |
| 6. | Clausell | 5-6 | 57 | 166 | 75% |
| 7. | Davis | 1-6 | 303 | 52 | 85% |
| 8. | Dawson | 1-6 | 420 | 174 | 75% |
| 9. | Duling | 5-6 | 244 | 171 | 59% |
| 10. | French | 1-2 | 404 | 154 | 72% |
| 11. | Galloway | 1-6 | 385 | 162 | 70% |
| 12. | George | 1-6 | 83 | 103 | 57% |
| 13. | Green | 1-4 | 95 | 518 | 84% |
| 14. | Isable | 5-6 | 607 | 467 | 57% |
| 15. | Johnson | 3-6 | 790 | 310 | 72% |
| 16. | Jones | 4-6 | 676 | 434 | 61% |
| 17. | Key | 1-4 | 0 | 368 | 100% |
| 18. | Lake | 1-3 | 329 | 307 | 52% |
| 19. | Lee | 1-6 | 128 | 296 | 70% |
| 20. | Lester | 1-4 | 68 | 156 | 70% |
| 21. | McLeod | 1-6 | 51 | 665 | 93% |
| 22. | McWillie | 1-4 | 42 | 517 | 92% |
| 23. | Marshall | 1-4 | 0 | 432 | 100% |
| 24. | Morrison | 1-4 | 549 | 0 | 100% |
| 25. | Poindexter | 1-6 | 118 | 82 | 59% |
| 26. | Power | 1-2 | 267 | 122 | 68% |
| 27. | Raines | 1-6 | 261 | 360 | 58% |
| 28. | Reynolds | 1-4 | 1,056 | 0 | 100% |
| 29. | Smith | 1-4 | 488 | 0 | 100% |
| 30. | Spann | 1-6 | 47 | 497 | 91% |
| 31. | Sykes | 1-6 | 179 | 400 | 69% |
| 32. | Walton | 1-4 | 638 | 0 | 100% |
| 33. | Watkins | 5-6 | 317 | 259 | 55% |
| 34. | Whitfield | 1-3 | 369 | 127 | 74% |
| 35. | Wilkins | 1-4 | 116 | 373 | 76% |
| | | | 10,314 | 9,028 | |
| | Special Ed. | | 218 | 153 | |
| | TOTAL | | 10,532 | 9,181 | |

*Under this plan Barr, Robertson, and Martin would be closed.
**For use of percentages see note 5* *supra.*

[A 2652]

8.

HEW Plan With Modifications as Proposed by Plaintiffs*

| NAME OF SCHOOL | NEGRO | WHITE | % ** |
|---|---|---|---|
| I - All-Negro as of May 8, 1970 | | | |
| 1. Brown | 530 | 244 | 68% |
| 2. Isable | 607 | 467 | 57% |
| 3. *Morrison* | 349 | 200 | 64% |
| 4. *Reynolds* | 576 | 300 | 66% |

HEW Plan With Modifications as Proposed by Plaintiffs*

| NAME OF SCHOOL | NEGRO | WHITE | % ** |
|---|---|---|---|
| I - All-Negro as of May 8, 1970 | | | |
| 5. Robertson | | CLOSED | |
| 6. *Smith* | 388 | 100 | 80% |
| 7. *Walton* | 438 | 200 | 69% |
| II - All-white as of May 8, 1970 | | | |
| 1. *Casey* | 110 | 262 | 70% |
| 2. *Key* | 200 | 218 | 52% |
| 3. Lake | 329 | 307 | 52% |
| 4. Lee | 128 | 296 | 70% |
| 5. *Marshall* | 200 | 282 | 59% |
| 6. Sykes | 179 | 400 | 69% |
| III - Overwhelmingly white or Negro as of May 8, 1970 | | | |
| 1. Baker | 153 | 307 | 67% |
| 2. Bradley | 174 | 203 | 54% |
| 3. Clausell | 57 | 166 | 75% |
| 4. Dawson | 420 | 174 | 75% |
| 5. Johnson | 790 | 310 | 72% |
| 6. Jones | 676 | 434 | 61% |
| 7. Martin | | CLOSED | |
| 8. McLeod | 51 | 665 | 93% |
| 9. Power | 267 | 122 | 68% |
| 10. Spann | 47 | 497 | 91% |
| 11. Wilkins | 116 | 373 | 76% |
| IV - Integrated as of May 8, 1970 | | | |
| 1. Barr | | CLOSED | |
| 2. Boyd | 360 | 269 | 57% |
| 3. Davis | 303 | 52 | 85% |
| 4. Duling | 244 | 171 | 59% |
| 5. French | 404 | 154 | 72% |
| 6. Galloway | 385 | 162 | 70% |
| 7. George | 83 | 103 | 57% |
| 8. *Green* | 295 | 318 | 52% |
| 9. *Lester* | 148 | 156 | 51% |
| 10. Poindexter | 118 | 82 | 59% |
| 11. Raines | 261 | 360 | 58% |
| 12. Watkins | 317 | 259 | 55% |
| 13. Whitfield | 369 | 127 | 74% |
| 14. *McWillie* | 242 | 317 | 58% |

* Only the italicized schools are affected by Plaintiffs' modifications. And all grade structures and zone boundaries are identical to those of the HEW plan.
** For use of percentages see note 5 * *supra.*

[A 2651]

But meantime something must be done now. We cannot accept the proposition that over 70% of the Negro elementary students are to remain in substantially all Negro schools during the time the case undergoes more complete exploration. Consequently, pending the remand hearing and order of the District Court, discussed next, the School District is to operate under the plan approved below by the order of June 15, 1970, but with the following modifications:

(i) Brown is to be paired with Power.

(ii) Boyd is to be paired with Walton.

(iii) George is to be paired with Martin.

(iv) Robertson is to be paired with Poindexter.

(v) Lester is to be paired with Isable.

(vi) Watkins, Morrison, and Smith are to be grouped.[9]

(vii) The School District shall have the option of pairing:

(a) Jones with Lake or

(b) Johnson with Lake.

By these pairings and clusterings the percentage of Negroes in substantially all Negro schools will be reduced from over 70% to about 20%.[10] We must re-emphasize that these mandated modifications are an interim requirement and are not "frozen". The District Court is to begin a hearing not later than September 25, 1970. The hearing and order will canvass the whole elementary system with whatever changes are needed such as appropriate or required pairing, grouping, clustering, grade restructuring, and all other factors called for by our decisions and those of the Supreme Court. It will, of course, prescribe the time the changes are to become effective which must be at a time not later than January 1971 representing a midyear date regardless of formal terms or semesters. Likewise, all of the provisions of Part III, Singleton will apply as to appeals, record, briefs, etc.

Of course, the changes that will come as a result of the modifications we now specify and from the November order now called for will cause midyear disruptions, pupil reassignment and the like. But on balance, this is less costly than a continued loss of rights of a large number of students.

Modified and remanded.

## SUPPLEMENTAL ORDER

To the extent consent of this Court is necessary or desirable the Court on motion of the Trustees of the Jackson Municipal Separate School District (Defendant-Appellee) joined therein by Plaintiffs-Appellants, ORDERS:

*First:* The opinion-order of August 12, 1970 is modified as follows:

(a) To delete the requirement that the School District is to operate under interim modifications of the plan approved by District Court order of June 15, 1970; such deletion to be conditioned upon an immediate hearing by the District Court prior to commencement of the September school term.

(b) To provide that the September term for elementary schools may open under a new, comprehensive order of

---

9.

| | School | N | W |
|---|---|---|---|
| (i) | (Power | 39 | 366 |
| | (Brown | 658 | 0 |
| (ii) | (Boyd | 191 | 340 |
| | (Walton | 845 | 80 |
| (iii) | (George | 83 | 91 |
| | (Martin | 206 | 17 |
| (iv) | (Robertson | 320 | 0 |
| | (Poindexter | 134 | 167 |
| (v) | (Lester | 138 | 228 |
| | (Isable | 517 | 0 |
| (vi) | (Watkins | 129 | 270 |
| | (Morrison | 472 | 78 |
| | (Smith | 1022 | 0 |
| vii(a) | (Jones | 1234 | 10 |
| | (Lake | 50 | 615 |
| vii(b) | (Johnson | 862 | 50 |
| | (Lake | 50 | 615 |

[A3026]

10. The final number in the paired schools will vary depending on the option under (vii) (a) or (b), *supra:*

| | Jones-Lake | | Johnson-Lake | |
|---|---|---|---|---|
| | N | W | N | W |
| (i) - (vi) | 4754 | 1637 | 4754 | 1637 |
| vii(a) | 1284 | 625 | vii(b) 912 | 665 |
| TOTAL | 6038 | 2262 | 5666 | 2302 |

[A3025]

the District Court as required by the August 12 opinion of this Court.

(c) To provide that the opening of elementary schools may be delayed, if necessary, a reasonable length of time to permit a hearing and order by the District Court, so that midyear changes and accompanying disruption may be avoided.

*Second:* In addition to the action taken by this Court as an interim matter in our opinion of August 12, 1970, the attention of the District Court is called to our recent cases in which this Court has mandated pairings, clustering or such other equally effective devices to reduce the number of all black schools (90% or more black) and the percentage and number of blacks in all black schools. See, e. g., Valley v. Rapides Parish Sch. Bd., 5 Cir., 1970, 434 F.2d 144; Pate v. Dade County Sch. Bd., 5 Cir., 1970, 434 F.2d 1151; Henry v. Clarksdale Mun. Sep. Sch. Dist., 5 Cir., 1970, [No. 29,165, August 12, 1970]; Ross v. Eckels, 5 Cir., 1970, 434 F.2d 1140; Allen v. Bd. of Public Instruction of Broward County, Fla., 5 Cir., 1970, 432 F.2d 362.

*Third:* The Court commends the evident collaboration of counsel and the parties and expresses its confident hope that a constitutional unitary system will be established on this hearing and the order to emerge from it.