Derek Jerome **SINGLETON** et al.,
Plaintiffs,

v.

**JACKSON MUNICIPAL SEPARATE
SCHOOL DISTRICT, Defendant.**

Civ. A. No. 3379.

United States District Court,
S. D. Mississippi,
Jackson Division.

Oct. 19, 1971.

Melvyn Leventhal, Reuben V. Anderson, Fred L. Banks, Jr., Jackson, Miss., Melvyn Zarr, New York City, for plaintiffs.

Jerris Leonard, Asst. Atty. Gen., David L. Norman, Department of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff-intervenor United States of America.

Thomas H. Watkins, Watkins & Eager, Jackson, Miss., William A. Allain, Asst. Atty. Gen., State of Mississippi, John Stone, City Atty., George P. Hewes, III, Richard Dortch, Brunini, Everett, Grantham & Quin, Robert C. Cannada, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

On June 22, 1971, this Court adopted and approved a student assignment plan for the elementary schools of the Jackson Separate Municipal Separate School District for the school year 1971–72 which provides for the intra-city transportation of approximately 4600 students in addition to those for whom inter-city transportation is furnished at state expense.

The schools had barely opened when on September 11, 1971, the Honorable John Bell Williams, Governor of the State of Mississippi, issued Executive Order No. 87, directing certain state of-

ficials to withhold from the Jackson School District the distribution of common school funds and minimum education program funds until such time as he was satisfied that the school district is in full compliance with state laws applicable to the transportation of school pupils. In the school board's amended operating budget for the current year totaling $20,684,000.00, approximately 40 percent, or approximately $8,500,-000.00, comes from state funds known as the common school funds, minimum education program funds and homestead exemption funds, and the remaining 60 percent is from local funds. Of the state funds, a portion has already been distributed to the school board, but at stake is approximately $6,500,000.00, earmarked for the payment of teachers' salaries, and which is being withheld by virtue of the Governor's Executive Order. School officials testified that teachers' salaries cannot be paid past October 1971 unless further distributions of state funds are received.

The school board, defendants throughout this litigation which began in 1963, moved promptly to add the state officials involved in the Executive Order, as additional defendants herein, namely, Thomas Arny Roden, as Chairman of the State Tax Commission; James Monroe Walker, Associate Commissioner of the State Tax Commission; Robert A. Biggs, Jr., Associate Commissioner of the State Tax Commission; L. G. Holyfield, Secretary of the State Tax Commission; W. Hampton King, State Auditor of Public Accounts and as Chief Executive Officer of the State Department of Audit; and Hon. A. F. Summer, Attorney General, and asked for a temporary, preliminary and permanent injunction to restrain said officials from withholding state funds due the school district and from otherwise interfering with the implementation of the school plan approved by this Court. Upon notice to all parties, this Court held an emergency hearing on September 27, 1971, heard evidence and issued a temporary restraining order as requested, pending a further hearing on the request for preliminary and permanent relief. This hearing was had on October 13, 1971, at which time evidence was completed and briefs were submitted.

The statute on which the Governor relies is Section 6336–04 of the Mississippi Code of 1942, which provides that pupils who live within the corporate limits of a municipality and who are assigned to a school within said corporate limits shall not be considered as eligible for transportation within the meaning of the act. This section has been construed by the Attorney General of the State of Mississippi, added as a party defendant, as prohibiting intra-city bussing. Costs of transportation for students who live outside municipal limits and are assigned to schools within the city and those who live within city limits and are assigned to schools outside the city limits are, and have been reimbursed from state funds. These funds are in issue only to the extent that they are a part of all the state funds being withheld by virtue of the Executive Order.

The Court has no intention of detailing the volume and relentlessness of the litigation that has preceded the converting of the schools in the Jackson Separate Municipal School District from a segregated status, de jure, to a unitary system, except to show that the Court will not now brook interference with the present plan. Suffice it to say this cause began March 4, 1963, when the original plaintiffs filed their suit. It was dismissed, the decision being reversed and the cause re-instated by the Fifth Circuit Court of Appeals on February 14, 1964, Evers v. Jackson Municipal Separate School Dist., 328 F.2d 408, which court also temporarily and permanently enjoined the school board from segregation of the races, even though segregation was required by state law. On July 15, 1964, the school board offered its first desegregation plan, one of freedom of choice, starting with the first and second grades for the year 1965, and with this choice to apply to

successive grades annually, with grades ten, eleven and twelve to be opened for choice by 1969. Over plaintiff's objections, this plan was approved by the district court, and promptly accelerated by the Fifth Circuit to desegregate four grades a year, 348 F.2d 729. The school board was then directed to file a new plan, to which plaintiffs offered revisions. Also the school board desperately sought to effect a construction program to improve facilities at primarily negro schools which the district court approved. The Fifth Circuit reversed, 355 F.2d 865. With the en banc decision of the Fifth Circuit in the historic Jefferson decree, 5 Cir., 372 F.2d 836, freedom of choice was nullified as having failed to produce unitary schools, and the Jackson School District was directed in December 1969 to request HEW to submit integration plans. On January 6, 1970, multiple HEW plans were offered containing student assignments at the elementary and secondary levels. The school board offered its plans, primarily based on zoning and neighborhood schools and which would have required no intra-city transportation in conformance with state law and policy. The district court adopted the school board plan. The Fifth Circuit reversed, 426 F.2d 1364. Meanwhile, appeals to the Supreme Court to delay implementation of plans were denied. Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19. On May 6, 1970, the Fifth Circuit directed this Court to designate a bi-racial committee. This Court subsequently requested HEW, the bi-racial committee, and both parties to again submit student assignment plans. On June 15, 1970, the district court, after considering all plans and proposed modifications by plaintiff and the bi-racial committee, again adopted a plan which utilized inter-city and minimum intra-city bussing, particularly rejecting plans by HEW and plaintiffs which would have required massive intra-city bussing at an estimated cost of approximately $900,-000.00. On appeal, the Fifth Circuit approved the student assignment plan for the secondary schools, 430 F.2d 368, only after numerous alterations and modifications, and again rejected the plan for elementary assignments. In its order dated August 12, 1970, 5 Cir., 432 F.2d 927, and designated Singleton VI, the Appellate Court found from the elementary schools' enrollment that the results were unacceptable in that 70 percent of the negro elementary students were in all, or substantially all, negro schools. The Appellate Court found that the HEW plan offered a substantial improvement, plaintiffs' modifications more so, and under a plan so modified, there would have been no all negro schools. This conclusion was reached notwithstanding the considerable intra-city transportation which this Court found would have been required. In this same order, the Appellate Court directed, immediately, the further pairing and clustering of elementary schools, the school district to operate thereunder as an interim requirement, only until new hearings could begin on September 25, 1970. The order further stated: "The hearing and order will canvass the whole elementary system with *whatever* changes are needed such as appropriate or required pairing, grouping, clustering, grade restructuring, and *all other factors called for by our decisions and those of the Supreme Court.*" (Italics added.) These changes were made effective for January 1971 regardless of formal terms or semesters, the Appellate Court saying that even though the changes called for will cause mid-year disruptions, "this is less costly than a continued loss of rights of a large number of students."

Because of the school issues, including bussing, then pending before the Supreme Court, the District Court secured fourteen successive delays. When the Supreme Court finally issued its long awaited decision in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, with a hearing before this Court set for June 1971 to again adopt a plan, it was

obvious to this Court and the parties that intra-city bussing was the inevitable tool remaining with which to overcome the constitutional deficiencies of the Jackson School District. This conclusion was reached reluctantly, and only after all other avenues had been explored, tried and rejected as insufficient.

The Jackson School District, at the elementary level, less than two years ago, had an approximate total enrollment of 40,000 students, 60 percent white and 40 percent negro. The enrollment is now less than 30,000, with negroes in the majority. The negro population and the formerly negro schools are concentrated in approximately the center of the district. It does not take a mathematician to conclude that the only way, all else having failed, to erase all vestiges of the racial identification of those Jackson schools in the negro sector of town required the closing of some, the construction of the two proposed educational centers which will not be racially identifiable, and the cross-assignment of blacks and whites from their former schools. For children of elementary school age, intra-city transportation was and is' required. The plan provides that bussing will be furnished those elementary students who live more than one and a half mile from the school to which they are assigned. The school board was entitled to an enabling order to know where it stood and to fulfill its obligation to have busses available for the impending term. Accordingly, this Court on June 2, 1971, issued its pretrial order authorizing the use of bussing as an effective tool in accomplishing an acceptable assignment plan for elementary students. On June 22, 1971, the school board presented a plan, agreed to and accepted by plaintiffs, the U. S. Department of Justice, and the bi-racial committee by a vote of 8 to 2, which was adopted and approved by this Court, and which utilizes intracity transportation for students living more than 1½ miles from their assigned schools. The Court is aware of much publicity that attended the pre-trial order and adoption of the plan on June 22, 1971, and, although certainly not without dissent from some segments of the community, there was an air of relief for all concerned, and the city of Jackson, with the active support of a large part of the community, settled down for the first time since 1963 to conduct a unitary school system. The Court emphasizes that any attempt on the part of anyone to hinder the implementation of a unitary system in the Jackson schools only delays the inevitable and prolongs the jurisdiction of this Court.

In the execution of the Governor's Executive Order, ill-timed at the beginning of school, it is alleged to be his duty to see that state funds are not used in contravention of state statute, and it is further alleged that this Court had no authority in its pre-trial order of June 2 to order bussing in violation of a state statute. Unquestionably the Executive Order is being used as a means to reopen the approved integration plan to see if in fact this Court could have adopted a plan without intra-city bussing, or a "little" bussing, or less bussing than the plan calls for. This Court will not only not allow an attack of this kind to be made on its order, but, once having found intra-city bussing necessary, finds that the degree of bussing is immaterial, unless oppressively excessive or not economically feasible. At this stage of the game, to give consideration to a plan which conceivably would require one or more less busses, or a few less miles of transportation hardly bears comment. Should such a reduction accomplish less integration, it would be subject to not only an appeal, but would be reversible. The Fifth Circuit has consistently, in this case and others, approved only those modificiations which produce more integration, not less.

Aside from the state's contentions, the school board at the first and second hearings offered evidence that it is not in fact using state funds to pay for intra-city transportation, and therefore the Governor is without authority to

withhold state funds appropriated and otherwise due.

■ During the last school year the city schools owned 52 busses, running 48 routes involving inter-city transportation. By combining routes for the present year, the board has found it necessary to purchase 69 additional busses, five to be used as spares, and by doubling some runs, is presently operating 150 routes. The board has hoped that the cost of the additional busses could be borne by Emergency School Assistance funds. This has not materialized. The board has meanwhile allocated the total cost, approximately $504,000.00, to be paid for out of the district's accumulated reserves totalling $1,500,000.00. This reserve fund, according to the board, has been built up from local revenue sources, with the possible exception of homestead exemption funds, reimbursed by the state but insignificant in amount. The school board has set up a separate transportation account for all items attributable to intra-city bussing, to be funded from local income sources solely, and containing no funds derived from the state. The evidence overwhelmingly convinces the Court that this is true, that the school board has not spent and does not contemplate spending any funds derived from state sources on intra-city transportation, and has not violated Section 6336–04 of the Mississippi Code. Although this Court has not, by its pre-trial order of June 2, or its order of June 22, 1971, declared the Mississippi statute unconstitutional, it has said that such statute, otherwise constitutional on its face, may not be interposed to frustrate federal mandates. See particularly Harvest v. Board of Public Instructions of Manatee County, Florida, D.C., 312 F.Supp. 269, wherein the Governor of the State of Florida was restrained from any activity or conduct which would serve in any way to impede the implementation of the desegregation plans ordered in the Florida public schools.

■ Accordingly, this Court finds that the Jackson Separate Municipal School District is entitled to a preliminary and permanent injunction against the state officials named above, restraining them from withholding any and all state funds appropriated and normally due the Jackson school district, and such officials, their agents, servants, employees and attorneys are enjoined from otherwise interfering within any way or fashion or impeding the implementation of the school plan as adopted and approved by this Court on June 22, 1971.

It is noted, contrary to the contention of the additional defendants herein, that Section 6336–02 of the Mississippi Code authorizes the board of trustees of any municipal separate school district, in its discretion to expend any funds available to it other than minimum education program funds (state derived), to defray transportation costs not covered by minimum education program funds. See also Section 6411–10 which provides that the boards of trustees of municipal separate school districts shall have full control of the distribution, allotment, and disbursement of all funds which may be provided for the support and maintenance of the schools of such district whether such funds be minimum education program funds, funds derived from supplementary tax levies as authorized by law, or funds derived from any other source whatsoever.

An order complying with Rule 65(d) of the Federal Rules of Civil Procedure may be submitted, with costs assessed to the state.