404 F.Supp. 338 (1975)
Robert James JIMERSON, Individually and on behalf of all others similarly situated, Plaintiff,
v.
KISCO COMPANY, INC., Defendant.
No. 74-155C(4).
United States District Court, E. D. Missouri, E. D.
November 5, 1975.
*339 Forriss D. Elliott Law Office, St. Louis, Mo., for plaintiff.
Samuel C. Ebling, John B. Lewis, Millar, Schaefer & Ebling, St. Louis, Mo., for defendant.

OPINION
NANGLE, District Judge.
Plaintiff Robert James Jimerson brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Although originally brought as a class action, plaintiff voluntarily dismissed the class aspects of this suit and proceeded to trial on his individual claim.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. Plaintiff, Robert James Jimerson, is a black male, resident of the State of Missouri and was during all times relevant herein a citizen of the United States.
2. Defendant, Kisco Company, Inc., is a corporation engaged in industry affecting commerce which, at all times material to this action, employed more than 25 persons during each week of the calendar year and is an employer within the meaning of 42 U.S.C. § 2000e (b).
3. On September 29, 1971, plaintiff was hired for employment by defendant. The application form used at that time and which plaintiff filled out contained the question, "Have you ever been arrested for other than minor traffic violations?". Plaintiff answered this question in the affirmative and stated to Orson Abernathy, defendant's former personnel counselor, that plaintiff had not been arrested or convicted since 1963.
4. Plaintiff executed an authorization for the company to obtain an arrest record report from the City and County Police Departments. This was part of the normal application process.
5. Several days later, Abernathy received an arrest report on plaintiff from the City Police Department which indicated that plaintiff had been arrested in 1971.
6. On October 7, 1971 plaintiff was discharged from defendant's employ for falsifying his police record. The application form had printed on it the following:
I agree that any false statements in this application shall be sufficient cause for rejection or dismissal.
7. The Court finds that there was a deliberate falsification of this record, made with knowledge of the consequences of such falsification.
8. In 1969, defendant entered into a contract with the Department of Labor, Manpower Administration, which involved extensive affirmative action on *340 the part of defendant. In particular, the company was involved in the active recruitment of hard core unemployables and persons with police or institutional records. With regard to the latter, the agreement between defendant and the Department of Labor stated:
A special approach will be needed. Counselors will recognize the fact that these trainees may have obtained assets in addition to their obvious liabilities. Skills may have been acquired while in correctional institutions. Special counseling will encourage vocational exploration, stimulate job interest and motivate planning.
9. This contract was completed in early 1971. The unrefuted evidence establishes, however, that defendant continued the programs instituted thereunder, including recruitment of minorities and persons with police and institutional records.
10. The reason for asking for police and institutional records was to determine whether an applicant had received any training which might be utilized in his employment and to gather information as to social problems so as to help the new employee adjust to employment.
11. The following reflects the racial composition of the relevant areas indicated:

 1970 Total Population Distribution by Race (Percent).
Region White Black Other
----------------------------------------------------------
U.S. TOTAL 87.5 11.1 1.4
MISSOURI TOTAL 89.3 10.3 .4
St. Louis City 58.7 40.9 .5
St. Louis County[*] 94.8 4.8 .4
St. Louis City and
 County Total 80.5 19.0 .4
Richmond Heights 86.3 12.8 .8
University City 78.8 20.0 1.1

12. In 1971, defendant employed 364 persons, of whom 238, or 65% were black. In 1974, defendant employed 447 persons, of whom 273, or 61% were black.
13. Of the total applicants for employment with defendant, the following are the percentages of black applicants for the indicated periods of time:

 1972 64%
 1973 76%
 8/1/73 to 10/31/73 91%
 11/1/73 to 1/31/74 83%
 2/1/74 to 4/30/74 71%.

Of the total number of applicants hired, the following are the percentages of black applicants for the indicated periods of time:

 1972 64%
 1973 58%
 8/1/73 to 10/31/73 85%
 11/1/73 to 1/31/74 59%
 2/1/74 to 4/30/74 66%.

14. Of the persons in defendant's employ on August 1, 1973, a total of 416 persons, three white employees have been terminated who had been convicted of a crime, two have been terminated who had no conviction record, four were employed with conviction records, and none were then employed with an arrest record. As of the same date, thirteen black employees have been terminated who had conviction records, eleven have been terminated who had no conviction records, eleven were then employed with conviction records and two were then employed with arrest records. Thus, 71% of the White employees terminated had conviction records while 54% of the black employees terminated had conviction records.
15. Defendant did not use the arrest and conviction information obtained to refuse to hire, or to discharge employees. On the contrary, the evidence establishes that defendant did hire persons with arrest and conviction records.
16. The following is the total arrest distribution by race for the areas and years indicated:

*341
Region/Year White Black Other
------------------------------------------------
ST. LOUIS POLICE DEPT.
 1970 28.0 72.0
 1971 28.3 71.7
 1972 29.0 71.0
 1973 26.8 73.2
CLAYTON, MO. POLICE DEPT.
 1969 50.5 49.5 0.0
 1970 42.7 56.7 .6
 1971 37.8 56.7 .3
 1972 40.3 59.2 .4
 1973 37.1 62.9 0.0
RICHMOND HEIGHTS
POLICE DEPT. 
 1969 47.5 50.8 1.6
 1970 53.8 45.4 .8
 1971 50.0 48.4 1.6
 1972 55.5 44.2 .3
 1973 41.4 57.5 1.0
 1974 (through Nov. 1) 45.3 54.7 0.0
UNIVERSITY CITY
POLICE DEPT. 
 1969 48.6 51.4 0.0
 1970 43.4 56.3 .4
 1971 36.4 62.1 1.4
 1972 32.1 67.3 .6
 1973 28.2 70.9 .9
 1974 (through Oct. 31) 20.5 79.3 .3
ST. LOUIS COUNTY
UNINCORPORATED AND
CONTRACTED AREAS 
 1969 85.0 14.9 .2
 1970 88.2 11.7 .1
 1971 88.5 11.2 .3
 1972 87.6 12.2 .3
 1973 88.8 11.1 .0

Without dispute, black persons are more likely to suffer arrest records than are white persons.
17. Within 5 days of discharge, plaintiff filed a complaint with the Equal Employment Opportunity Commission. On June 21, 1973, plaintiff was notified that the Equal Employment Opportunity Commission had decided not to pursue plaintiff's case and that plaintiff was entitled to request a Right to Sue letter. This letter was requested on January 22, 1974 and sent on January 24, 1974. Suit herein was filed on March 5, 1974, within the 90 day period.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and of the parties to this action in accordance with 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1343. This suit was timely filed. Tuft v. McDonnell Douglas Corp., 517 F.2d 1301 (8th Cir. 1975).
Plaintiff's argument, herein, is that by refusing to hire, or discharging a person who has falsified his arrest record, defendant is discriminating against black persons, since blacks would be more affected by such a policy than whites as blacks are arrested in proportionately greater numbers.
In Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Court recognized that Title VII prohibited "not only overt discrimination but also practices that are fair in form, but discriminatory in operation". Id. at 431, 91 S.Ct. at 853. Once plaintiff has established that the practice has a disparate impact upon blacks, the burden shifts to the employer to justify the same. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
In Green v. Missouri Pacific Railroad Company, 523 F.2d 1290 (8th Cir. 1975), the court held that a disproportionate racial impact could be established by either of three statistical methods. The first method would be to determine "whether blacks as a class . . . are excluded by the employment practice in question at a substantially higher rate than whites". The second is to compare "the percentage of black and white job applicants actually excluded by the employment practice . . .". And, the third is to examine "the level of employment of blacks by the company . . . in comparison to the percentage of blacks in the relevant geographical area". Id. at 1293.
It is this Court's conclusion that plaintiff has failed to establish a prima facie case under any of the three methods. The practice under attack is the practice of discharging employees who have falsified their arrest record on the application form. The request for that information, in this case, can not be the practice complained of since plaintiff was not excluded from employment *342 because of his record but was discharged because he answered falsely. Therefore, to establish a prima facie cause of disproportionate racial impact, plaintiff needed to submit statistical data showing that blacks as a class were excluded for falsifying their arrest records at a higher rate than whites, or that black applicants were excluded at a higher rate than white applicants for the same reason. The data submitted failed to establish either. While the data did establish that blacks are arrested at a higher rate than are whites, there is no evidence showing that blacks were excluded for falsifying this information at a higher rate than whites; there was simply no evidence on this point at all.
The data submitted concerning "the level of employment of blacks . . . in comparison to the percentage of blacks in the relevant geographical area" fails to establish a prima facie case. The evidence shows that in 1970 the City of St. Louis was 40.9% black, that the St. Louis metropolitan area was 19% black and that in 1971, defendant's employees were composed of 65% black employees.
This Court is aware of decisions of the Equal Employment Opportunity Commission, CCH EEOC Decisions (1973) ¶ 6357, ¶ 6390, finding reasonable cause to believe that violations of Title VII exist where blacks are discharged for falsifying arrest records. Nonetheless, this Court is bound by the holding in Green v. Missouri Pacific Railroad Company, supra and under the tests enunciated therein, plaintiff has failed to establish a prima facie case.
Gregory v. Litton Systems, Inc., 316 F.Supp. 401 (D.C.Cal.1970) and Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 are inapplicable since both cases involved refusals to hire because of arrest records. Such refusal is absent in the present case, since the evidence clearly establishes that defendant does hire persons with arrest records and does not use the information obtained for discriminatory purposes.
Having failed to prove the claim of employment discrimination based upon race, the Court will give judgment to the defendant at plaintiff's costs.
NOTES
[*] St. Louis County includes 18 townships comprising suburban areas around St. Louis City, but does not include St. Louis City.