James **DAWSON** et al., Plaintiffs,

v.

Robert A. **PASTRICK** et al., Defendants.

No. 71 H 215.

United States District Court, N. D. Indiana, South Bend Division.

Nov. 15, 1977.

Jay N. Given, East Chicago, Ind., Dean L. Sutton, Valparaiso, Ind., for plaintiffs.

Terrance L. Smith, East Chicago, Ind., Hilbert L. Bradley, Gary, Ind., Michael E. Connelly, East Chicago, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, District Judge.

This is an action by a plaintiff class consisting of all Black and Spanish-surnamed persons who, in the past, applied for employment with the East Chicago Fire Department but were not hired for allegedly racially discriminatory reasons. Plaintiffs cite six specific and individual cases of discriminatory acts resulting in denial of employment to support their contentions. These incidents involve plaintiffs, Thomas Brannon, a black United States citizen and an East Chicago resident, who applied for a position on the East Chicago Fire Department in May 1971 but was not hired; Lorenzo Munoz, John Gomez and Carolos Venture, all Spanish-surnamed United States citizens and East Chicago residents who applied for positions on the East Chicago Fire Department in 1966, 1970 and 1971, respectively, but were not hired; Shannon Landers, a black United States citizen and an East Chicago resident, who applied for a position on the East Chicago Fire Department in 1968 and passed the physical examination but was not hired, and Ruben Ceja, a Spanish-surnamed United States citizen and an East Chicago resident, who intended to apply for a position on the East Chicago Fire Department at age 21, but did not.

## I. HISTORY OF THE CASE

The present case is one of the oldest pending actions before this Court. Its history has been, to say the least, long and involved. The following is a synopsis of the chronological development of this case:

1. August 3, 1971—The plaintiffs filed their initial complaint.

2. May 26, 1972—This Court, by the Honorable George N. Beamer, granted the intervening defendant's, Theodore Sendak as Attorney General of the State of Indiana, motion and dismissed plaintiffs' complaint for failure to state a claim upon which relief can be granted.

3. August 3, 1972—The plaintiffs filed their amended complaint.

4. April 6, 1973—The plaintiffs filed their supplementary and second amended complaint.

5. May 23, 1973—The plaintiffs filed their supplementary and third amended complaint.

6. December 17, 1974—This Court signed and entered a partial consent decree, which was approved as to form and content by plaintiffs' counsel and counsel for the City of East Chicago.

7. June 4, 1975—The plaintiffs and defendant, City of East Chicago, filed an additional proposed partial consent decree.

8. January 20, 1976—This Court held a hearing at which time the East Chicago Fire Civil Service Commission's motion to intervene as a party defendant was granted. This Court also ordered all parties to submit briefs relative to the constitutional status of the consent decree signed by the Court on December 12, 1974 as well as the proposed partial consent decree submitted June 4, 1975. Notice was also given to Theodore Sendak, Attorney General of the State of Indiana, relative to the constitutional status of I.C. 19-1-37.5.

9. May 24, 1976—This Court ruled that the Indiana Statute in question, I.C. 19-1-37.5 is constitutional and ordered all parties to propose and fashion appropriate remedies accordingly.

10. May 31, 1977—This case was tried before this Court. Partial judgment as to defendants, Robert A. Pastrick, Charles Pecura, Edward Paganelli, Members of the East Chicago City Council, Members of the East Chicago Board of Safety, The East Chicago Fire Civil Service Commission and The East Chicago Firemen's Pension Board Trustees, approved by counsel, signed by the Court and entered this date. Settlement agreement approved by counsel, signed by the court and filed. Judgment entered for the defendant, Board of Trustees for the East Chicago Firemen's Pension Fund, and against the plaintiffs. Plaintiffs presented evidence, concluded and rested. Defendants presented no evidence. All parties rested. The Court ordered all counsel to submit Findings of Fact and Conclusions of Law which reflect a proper remedy and disposition of this case. Oral Argument was then set for Friday, August 12, 1977.

11. August 12, 1977—The Court heard oral argument on the respective parties' proposed Findings of Fact and conclusions of Law and appropriate remedies.

## II. ISSUES

Many issues in this case are no longer before this Court, as a result of the partial consent judgment entered on May 31, 1977 or as a result of successful negotiation and settlement. However, there still remain several issues that this Court must resolve as defined in the pretrial order. The contested issues of fact are:

1. Whether affirmative compensatory relief relating to hiring is necessary to remedy the effects of past discrimination.

2. The extent of any entitlement to back pay resulting from the failure to hire plaintiffs.

The contested issues of law are:

1. Whether affirmative, compensatory hiring ratios must be imposed.

2. Whether the defendant city's proposed plan for reorganization of the East Chicago Fire Department is racially discriminatory.

3. Whether the plaintiffs and members of the class are entitled to back pay.

4. Whether the plaintiffs are entitled to costs, including reasonable attorney fees.

■ Additionally, although not raised in the pretrial order or at the trial, the defendant intervenor, Civil Service Commis-

sion, raised in its brief and argued in open court on August 12, 1977, the jurisdictional issue of whether the plaintiffs have stated a claim under Title VII. While there is no dispute that the pretrial order controls the issues of the case, there is also no dispute that a party may raise subject matter jurisdictional issues at any time. Federal Rules of Civil Procedure 12(h)(3). See also, *Capron v. Van Noorden*, Cranch (6 U.S.) 126, 2 L.Ed. 229 (1804). *Skolnick v. Bd. of Comm. of Cook Co.*, 435 F.2d 361 (7th Cir. 1970).

This Court will first turn to the jurisdictional issues.

### III. JURISDICTION

■ From the outset this Court's subject matter jurisdiction over this case was not seriously challenged. Indeed, in the pretrial order, filed on the day of trial of this case, all counsel conceded jurisdiction. It is axiomatic however, that parties cannot stipulate to subject matter jurisdiction if none, in fact, exists. It was not until August 12, 1977, at the post-trial argument that the City of East Chicago and the Civil Service Commission challenged this court's jurisdiction over this case. Consequently this Court has not had the benefit of a full and complete briefing by counsel on the jurisdictional issues raised. Rather than delay further this very protracted case by requiring additional briefing, this Court will now address the jurisdictional issues raised.

By way of the plaintiffs' supplementary and third amended complaint, filed on May 23, 1973, the plaintiffs have advanced three separate theories of recovery. They have alleged facts which they contend state causes of action under the Thirteenth and Fourteenth Amendments to the United States Constitution, Title 42 U.S.C. §§ 1981 and 1983, and the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended in 1972. The plaintiffs also allege that jurisdiction is conferred on this Court by Title 28 U.S.C. § 1343(3),—to redress a deprivation under color of law of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

### (A) CONSTITUTIONAL CLAIMS

■ With respect of plaintiffs' constitutional claims, this Court has no difficulty in holding that the plaintiffs have stated a cause of action directly under the Thirteenth and Fourteenth Amendments to the United States Constitution. While not specifically alleged by the plaintiffs, this Court has jurisdiction to hear the constitutional claims under 28 U.S.C. § 1331. Several courts have now held that a plaintiff may state a cause of action against a municipal corporation directly under the United States Constitution which is cognizable under § 1331. See, *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Calvin v. Conlisk*, 520 F.2d 1 (7th Cir. 1975); *United Farmworkers of Florida v. City of Delray Beach*, 493 F.2d 799, 802 (5th Cir. 1974); *Chavez-Salido v. Cabell*, 427 F.Supp. 158 (C.C.Calif.1977); *Raffety v. Prince George's County*, 423 F.Supp. 1045 (C.D.Md.1976); *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975); *Robinson v. Conlisk*, 385 F.Supp. 529 (N.D.Ill.1974). See also, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), (where the Supreme Court held that, without an enabling statute, liability in damages existed for direct constitutional violations with district court jurisdiction being found in § 1331(a)).

### (B) 42 U.S.C. §§ 1981 and 1983 CLAIMS

■ The plaintiffs have also alleged causes of action under both 42 U.S.C. § 1981 and § 1983. It is with the § 1983 violations that the plaintiffs have failed to overcome jurisdictional infirmities. The plaintiffs' basic contention is that the City of East Chicago, its agencies, subdivisions and officers, have violated certain civil rights secured to the plaintiffs by the United States Constitution and by particular Acts of Congress. However, in order for the City of East Chicago to be held liable under § 1983 for the deprivation of certain civil rights secured to the plaintiffs, the defendant city

must be a "person" under § 1983. The Supreme Court in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), extended the holding of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipal corporations are not "persons" under § 1983 regardless of whether the plaintiff is seeking monetary damages or equitable relief.

Therefore, this Court now holds, consistent with *Bruno* and *Monroe, supra,* that the plaintiffs have failed to state a claim upon which relief can be granted under § 1983 against the City of East Chicago or any of its political or administrative subdivisions.

While it is necessary for the defendants in a § 1983 suit to be "persons" under § 1983 such requirement is not present under § 1981. In *Robinson v. Conlisk,* 385 F.Supp. 529 (N.D.Ill.1974), Judge Marshall, after making a thorough analysis of the legislative history of both § 1983 and § 1981, concluded that the respective sections were intended to reach different situations. Judge Marshall concluded that unlike § 1983,

"Section 1981 prohibits all discrimination, whether it be by individuals, municipalities or police review boards. I cannot ignore legislative history and the broad language of § 1981. Section 1981 means what it says: all discrimination is prohibited, regardless of whether the source of the discrimination is a municipal corporation." Id. at 535.

In *United States v. City of Chicago,* 549 F.2d 415 (7th Cir. 1977), the Seventh Circuit Court of Appeals agreed with Judge Marshall's conclusions respecting § 1981:

". . . the language, purpose, and legislative history of section 1981 differ substantially from those of section 1983. Unlike section 1983, which requires action under color of state law, section 1981, intended to enforce the thirteenth amendment, prohibits all racial discrimination which deprives any persons of the 'full and equal benefit of all laws.' *Runyon v. McCrary,* 427 U.S. 160, 170, 96 S.Ct. 2586, 2605, 49 L.Ed.2d 415 (1976); *Jones v. Alfred H. Mayer Co.,* 392 U.S.

409, 437–444, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The exception from liability for municipalities that can be discerned from the legislative history of section 1983 is absent in the language or history of section 1981." Id. at 425.

Therefore, this Court now holds that the plaintiffs have stated a cause of action under § 1981 against the defendants and cognizable by this Court under 28 U.S.C. § 1343(3).

### (C) TITLE VII CLAIMS, 42 U.S.C. § 2000e et seq.

Plaintiffs' claims under 42 U.S.C. § 2000e et seq. as amended in 1972 raise a very fundamental and substantial question. Plaintiffs' initial complaint was filed on August 3, 1971 prior to the 1972 amendments to 42 U.S.C. § 2000e. Subsequent to this Court's dismissal of the plaintiffs' initial complaint on May 26, 1972, the plaintiffs filed an amended complaint on August 3, 1972, a supplementary and second amended complaint on April 6, 1973 and a supplementary and third amended complaint on May 23, 1973, all subsequent to the 1972 amendment to 42 U.S.C. § 2000e which extended coverage to governmental agencies and political subdivisions. The defendants point out, however, that the City of East Chicago has not hired any firefighters since the effective date of the 1972 amendment due in part to the pendency of this lawsuit. They contend, therefore, that since there has been no hiring since 1972 there could not have been any discrimination with respect to hiring. The defendants underlying premise is that the 1972 amendment to 42 U.S.C. § 2000e is not retroactive for past discrimination but is only prospective, remeding discrimination occurring after the 1972 amendment.

The question of whether the 1972 amendment may be given retroactive effect for pre-amendment discrimination is a question of first impression in this circuit. There are several cases from the Second Circuit, however, that have addressed this issue. In *Popkin v. New York State Health & Mental Hygiene Facilities Improvement*

*Corp.,* 547 F.2d 18 (2d Cir. 1976), the plaintiff alleged that her employment termination, which occurred on January 15, 1971, was the result of sexual discrimination. The Second Circuit held that the defendant could not be held liable for any discrimination occurring prior to the 1972 amendment. Judge Smith, writing for the court, stated:

"The 1972 amendments to Title VII have no retroactive effect where they create new substantive rights. In *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975), we noted that '[t]he manifest injustice of such ex post facto imposition of civil liability is reflected in the general rule of construction that absent clear legislative intent statutes altering substantive rights are not to be applied retroactively.' 522 F.2d 411 (citations omitted). Relying on Weise, we refused to give the 1972 amendments retroactive effect in *Monell v. Department of Social Services,* 532 F.2d 259 (1976), cert. granted on other grounds, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977). *Monell* involved a suit for back pay against the City of New York and the board of education for discrimination which occurred prior to 1972. The court held that entirely new substantive rights had been created for city employees under Title VII." (footnote omitted) *Id.* at 20.

Similarly, in *Kramer v. Board of Education et al.,* 419 F.Supp. 958 (S.D.N.Y.1976), Judge Tenney wrote:

"Clearly, the sweep of Title VII was broadened by the 1972 amendments which brought municipalities and their subdivisions within the meaning of the term 'employers' under the Act. *Monell v. Department of Social Services,* 532 F.2d 259 (2d Cir. 1976). Equally clearly, the expanded provisions of Title VII do not apply retroactively to allegations of discrimination occurring prior to the effective date of the amendments on March 24, 1972. *Id.; Weise v. Syracuse University,* 522 F.2d 397, 410–11 (2d Cir. 1975). This is equally so as it applies to claims for back pay as well as reinstatement. *Hunter v. Model Cities Administration,* 75 Civ. 3201 (S.D.N.Y., March 19, 1976), at 4." *Id.* at 959.

Consequently the court in *Kramer, supra,* concluded that it lacked jurisdiction over the subject matter of the action. Several other courts have also reached the same conclusion as *Popkin* and *Kramer, supra.* See *Monell v. Department of Social Services of the City of New York,* 532 F.2d 259 (2d Cir. 1976), cert. granted on other grounds, 429 U.S. 1071 (1977), *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975), *Farris v. Board of Education of City of St. Louis,* 417 F.Supp. 202 (E.D.Mo.1976), *Weldon v. Board of Education of the School City of Detroit,* 403 F.Supp. 436 (E.D.Mich. 1975). Furthermore, this Court is unaware of any contrary authority relative to this issue.

Consistent with the Second Circuit, this Court now holds that the 1972 amendments to 42 U.S.C. § 2000e do not apply retroactively to allegations of discrimination occurring prior to March 24, 1972, the effective date of the amendments. Since the City of East Chicago has not hired any firefighters subsequent to March 24, 1972, the plaintiffs' allegations of hiring discrimination must necessarily be based upon discrimination claims occurring prior to the 1972 amendments. In light of this Court's ruling on the retroactive effect of the 1972 amendments, this Court further holds that the plaintiffs have failed to state claim under 42 U.S.C. § 2000e et seq. as amended in 1972, upon which relief can be granted.

## IV. MERITS

This Court will now address the merits of this case upon the jurisdictional bases that remain,—the constitutional claims under the Thirteenth and Fourteenth Amendments and § 1981 of Title 42 U.S.C.

## (A) CONSTITUTIONAL CLAIMS

■ The first issue this Court must reach is what is the plaintiffs' burden of proof in order to establish their constitutional claims? Until recently it was not entirely clear whether a plaintiff merely had to show a statistical disparity in order to es-

tablish a prima facie case. Such is the standard for claims under Title VII. See, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *U. S. v. City of Chicago*, 549 F.2d 415, 427 (7th Cir. 1977); *Stewart v. General Motors Corp.*, 542 F.2d 445, 449 (7th Cir. 1976). However, in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the Supreme Court held that racial discrimination could not be established by a statistical racial disparity. Rather, for constitutional claims, it is necessary to show an intent or purpose to discriminate by reason of race. Mr. Justice White, writing for the court, stated:

"As the Court of Appeals understood Title VII, employees or applicants proceeding under it need not concern themselves with the employer's possibly discriminatory purpose but instead may focus solely on the racially differential impact of the challenged hiring or promotion practices. This is not the constitutional rule. We have never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today." (footnote omitted) *Id.* at 238–239, 96 S.Ct. at 2047.

See also, *U. S. v. City of Chicago*, 549 F.2d 415 (7th Cir. 1977).

It would therefore appear, by reason of the United States Supreme Court decision in *Washington v. Davis, supra*, that in order for the plaintiffs to recover in this case they must prove that the City of East Chicago purposefully and intentionally discriminated against minorities in hiring for the East Chicago Fire Department. This they have not done. At trial in this cause there was no evidence introduced to show, even by inference, that the City of East Chicago intentionally or purposefully discriminated in its hiring practices for the fire department. While the City of East Chicago has entered into stipulations of fact regarding statistical racial discrimination, the stipulations within the pretrial order show *no* intent or purpose to discriminate. Under paragraph (F)(2) of the pretrial order certain individuals are named as minorities not being hired. However, the order goes on to say: "The defendants, however, deny that such non-hiring was for racial consideration."

The only other stipulations in the pretrial order deal with racial make-up, and as shown above this alone does not meet the constitutional standard of proof necessary to impose compensatory hiring ratios.

■ Therefore, consistent with *Washington, supra,* this Court now finds that the plaintiffs have failed to establish that the City of East Chicago intentionally or purposefully discriminated in its hiring practices for the fire department. Accordingly this Court now holds that the plaintiffs have failed to meet their burden of proof and now orders the Clerk of this Court to enter judgment in favor of the defendants and against the plaintiffs on the plaintiffs' claims under the Thirteenth and Fourteenth Amendments to the United States Constitution.

### (B) § 1981 CLAIM

■ The claim under 42 U.S.C. § 1981 is a statutory claim and the burden of proving intentional or purposeful discrimination required under a constitutional claim is not required. As the Sixth Circuit stated in *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974):

"As originally designed in 1866, Section 1981 was intended to uproot the institution of slavery and to eradicate its badges and incidents. See *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 422–437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (analysis applied to § 1981 in *Tillman v. Wheaton–Haven Recreation Assn.*, 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973).) When an employer, public or private, places more stringent requirements on employees because of their race, Section 1981 is violated. The purpose for which the Section was enacted—to afford equal opportunities to secure the benefits of American life regardless of race—re-

quires that a court adopt a broad outlook in enforcing Section 1981. Schemes of discrimination, whether blatant or subtle, are forbidden. *Newbern v. Lake Lorelei, Inc.*, 308 F.Supp. 407, 416 (S.D.Ohio 1968). *Cf. Lane v. Wilson*, 307 U.S. 268, 275, 59 S.Ct. 872, 83 L.Ed. 1281 (1939)." *Id.* at 504–505.

See also, *Jimerson v. Kisco Co., Inc.*, 404 F.Supp. 338 (E.D.Mo.1975); *Alvarez-Ugarte v. City of New York*, 391 F.Supp. 1223 (E.D.N.Y.1975); *Jones v. New York City Human Resources Adm.*, 391 F.Supp. 1064 (S.D.N.Y.1975), affm. 528 F.2d 696 (2d Cir. 1976).

■ As a result of stipulations of fact, the pretrial order and the trial of this case, the defendants have admitted or at least failed to rebut any of the plaintiffs' statistical evidence which shows a racial disparity between the racial composition of the fire department of East Chicago and the racial composition of the city itself. As a result, this Court now holds that the plaintiffs have made a prima facie case under § 1981 which stands unrebutted.

### (C) CITY OF EAST CHICAGO'S PLAN TO REORGANIZE THE FIRE DEPARTMENT

■ The City of East Chicago has proposed a plan to reorganize the fire department which will decrease the number of vacant positions on the fire department. The plaintiffs argue that this plan is racially discriminatory insofar that it perpetuates the effects of past discrimination and makes affirmative remedial relief less possible.

By way of response, the City of East Chicago contends that it finds itself in a position not unlike many other urban areas with a declining or frozen tax base and ever increasing expenses. The city indicates that current budget requests and anticipated income sources for 1978 will result in over a two million dollar deficit. Faced with this economic problem, the city chose to reorganize some of its services, including the fire department, in order to pare down its expenses and limit its deficit. The obvi-

ous result is fewer future positions on the fire department. The city contends that the plan to reorganize the fire department is not racially discriminatory because its effect, respecting future positions, is no greater upon minority applicants than non-minority applicants. It is neutral on its face and upon application.

This Court agrees. The plaintiffs have failed to show how future minority applicants would be prejudiced by the city's reorganization plan, anymore than non-minority applicants. The city's plan treats all future applicant equally. While admittedly under the city's plan there will be fewer future positions available, that in and of itself does not make the reorganization plan discriminatory. It will only delay the ultimate relief in this case—complete racial parity of the fire department. Furthermore, in light of the economic plight of the City of East Chicago the delay cannot be said to be unreasonable. As the Supreme Court stated in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), while discussing Title VII as applicable to § 1981:

"In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Id.* at 430–431, 91 S.Ct. at 853.

This Court now holds that the City of East Chicago's plan to reorganize the fire department is not an artificial, arbitrary or unnecessary barrier to employment and is not racially discriminatory.

### (D) BACK PAY

While the pretrial order indicates that there were both factual and legal issues relative to the plaintiffs' entitlement to

back pay, no plaintiff either at trial or in any post-trial brief has ever advanced the argument. Since no plaintiff presented any evidence or made any argument relative to the issue, this Court now deems the plaintiffs to have waived their claim to back pay.

## V. REMEDIES

The remaining issues of this case are remedial in ·nature. Consistent with this Court's earlier rulings, this Court will now fashion appropriate relief.

### (A) MANDATORY QUOTAS

▮ Plaintiffs in this case have argued vigorously for court imposed mandatory quotas as an appropriate remedy. They have cited considerable authority which has countenanced the imposition of mandatory quotas. See *U. S. v. City of Chicago,* 549 F.2d 415 (7th Cir. 1977); *Boston Chapter N A A C P v. Beecher,* 504 F.2d 1017 (1st Cir. 1974); *Bridgeport Guardians, Inc. v. Members of Bridgeport C S C,* 354 F.Supp. 778 (D.Conn.1973), mod. 482 F.2d 1333 (2d Cir. 1973); *Erie Human Relations Commission v. Tullio,* 493 F.2d 371 (3d Cir. 1974) (1–1 ratio); *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir. 1974); *U. S. v. Local # 38, I. B. E. W.,* 428 F.2d 144 (6th Cir. 1970); *Carter v. Gallagher,* 452 F.2d 315 (8th Cir. 1971) (1–2 ratio), and *U. S. v. Ironworkers Local 86,* 443 F.2d 544 (9th Cir. 1971). It should be noted, however, that these cases dealt with Title VII violations. In view of this Court's earlier ruling that the plaintiffs have failed to state a claim under Title VII, these cases are persuasive but not compelling. Additionally, these cases only recognize that a district court has the authority to impose mandatory quotas if in the exercise of its discretion the court deems it appropriate. The imposition of mandatory quotas is by no means a routine remedy. As Judge Swygert, speaking for the Seventh Circuit, stated:

"Preferential, numerical relief nevertheless remains an *extraordinary remedy,* and its use must be justified by the particular circumstances of each case." *U. S. v. City of Chicago,* supra, 437 (emphasis added)

▮ The particular circumstances of the present case cannot, in the opinion of this Court, justify the imposition of preferential numerical relief. Unlike the *City of Chicago, supra,* where the court was faced with a recalcitrant municipal defendant, the City of East Chicago in the present case has made several attempts during the pendency of this suit to rectify, in a mutually agreeable fashion, the effects of past discrimination. Furthermore, there exists other available means, short of court imposed mandatory quotas, which may be employed. One such available tool is to permit the implementation of Indiana's Civil Service Law (I.C. 19–1–37.5–1 et seq.) which was passed by the Indiana Legislature for the express purpose of eliminating racial, political and religious discrimination in hiring and promotion. (Earlier in this case this Court held this statute to be constitutional. See this Court's order of May 24, 1976.)

In light of the foregoing, this Court believes that justice would not be served by the imposition of mandatory quotas. Accordingly, this Court, mindful of the particular facts in this case in the exercise of its discretion, now declines to impose mandatory quotas as a remedy in this case.

### (B) COURT'S REMEDY

▮ While this Court will not impose mandatory quotas, it now orders the following relief:

1. The City of East Chicago through its various administrative agencies, including the East Chicago Fire Civil Service Commission, shall conduct affirmative recruitment of minorities for future employment.

2. All selective devices, including application forms, and all examinations used in making initial hiring decisions shall be validated in accordance with E.E.O.C. guidelines.

3. The Civil Service Commission shall adhere to the provisions and procedures of the Indiana Civil Service Law I.C. 19–1–37.5 et seq.

4. The City of East Chicago shall file every six months a report with this Court. In such report the City of East Chicago shall indicate the number of vacant positions that existed in the fire department for the preceding six months, the number and racial composition of the applicants for the vacant positions, and the racial compositions of the successful applicants selected for the vacant positions.

It should be noted, that should it appear in the future to this Court that the relief outlined above is inadequate, this Court shall not hesitate in imposing stronger measures, including preferential numerical relief. Furthermore, in order to insure compliance with its orders, this Court shall retain jurisdiction over this case.

### (C) COSTS AND ATTORNEYS FEES

■ The plaintiffs have asked the Court to award them, as the prevailing party in this lawsuit, costs and reasonable attorney fees. All concede, however, that such an award is left to the discretion of the Court. While the plaintiffs have established their case, their victory is neither complete nor total. The defendants have also prevailed on certain issues. Under these circumstances where both sides have been in part successful and unsuccessful in their argumentation, this Court feels that the award of attorney fees to one side alone would be unjust. Accordingly, this Court declines to award attorney fees to the plaintiffs.

However, with respect to costs, this Court feels that the plaintiffs are entitled to such an award. Accordingly, the plaintiffs are now awarded their costs in this action.