**Nazareth GATES et al.,
Plaintiffs-Appellees,**

v.

**John COLLIER, Superintendent of the Mississippi State Penitentiary, et al.,
Defendants-Appellants.**

**No. 79–1844.**

United States Court of Appeals,
Fifth Circuit.

May 14, 1980.

P. Roger Googe, Jr., Peter M. Stockett, Jr., Asst. Attys. Gen., Jackson, Miss., for defendants-appellants.

Carmack M. Blackmon, Asst. Atty. Gen., Dept. of Justice, Baton Rouge, La., for State of Louisiana, amicus curiae.

Frank R. Parker, Lawyers Committee for Civil Rights Under Law, Jackson, Miss., for Gates et al.

Before BROWN, HILL and RANDALL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This Court is not unanimous in its resolution of the two issues presented. All of us agree on the resolution of the issue presented in Part I. However, in Part II, Judges Brown and Randall concur with Judge Hill dissenting.[1]

This litigation over conditions at Mississippi's Parchman Penitentiary began in 1971. In 1974 we affirmed the district court's finding that various practices existing at Parchman violated the constitutional rights of inmates. 501 F.2d 1291 (5th Cir. 1974). The succeeding 5 years of litigation primarily involved the issue of attorneys' fees. In our most recent consideration of this case we affirmed awards of attorneys' fees plus expenses in favor of the plaintiffs and reversed the district court's order denying fees for appellate proceedings. 559 F.2d 241 (5th Cir. 1977). On January 25, 1979, the district court entered an order reaffirming its original award and awarding fees for appellate work. Two aspects of that order are now challenged by the defendants. First, the order directs that Mississippi's Auditor and Treasurer be added as defendants and that the other defendants submit a requisition to the Auditor for the issuance of a warrant upon the Treasurer to satisfy the judgment out of funds appropriated for the operation of Parchman or out of any other funds subject to the control of the Treasurer. Second, the order adds, to the principal amounts owing for attorneys' fees and other costs, post-judgment interest at the rate of 8% per annum.[2]

## I. The Directive to Pay

Defendants contend that the district court acted outside the scope of its authority in ordering the State Auditor to issue a warrant upon the State Treasurer and ordering the State Treasurer in turn to satisfy the judgment. We are directed to several provisions of the Mississippi Code which limit the authority of the State Treasurer to disburse state funds. In particular, Miss. Code Ann. § 11–45–5 (1972) prohibits the satisfaction of any judgment against the State "except by an appropriation therefor by the legislature."[3] The district court's order, it is urged, is contrary to the laws of Mississippi and requires the State Auditor and the State Treasurer to violate these valid laws. Thus, we are urged to hold that, unless the Mississippi statutes are declared unconstitutional, these plaintiffs must simply wait until the State voluntarily satisfies the judgment.[4]

The awards which the district court has ordered the defendants to satisfy out of

---

1. The appellate opinion procedure used in this case is not uncommon. See, e. g., *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 239 (5th Cir. 1976); *United States v. Register*, 496 F.2d 1072, 1075–76 (5th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975); *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 546, 551 (5th Cir. 1959). *Cf. Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1023 (5th Cir. 1967).

2. Interest on the initial award of $41,750 for attorneys' fees and $10,986.05 for other costs runs from February 14, 1973, the date of the original judgment. Interest on the supplemental award of $2,562.50 for time spent on appeal runs from August 10, 1978.

3. Two other sections of the Mississippi Code relating to the State Treasurer's authority are quoted in defendants' brief:
   Miss.Code Ann. § 7–9–9 (1972):
   It shall be the duty of the state treasurer to receive and keep moneys of the state in the manner provided by law, [and] to disburse the same agreeably to law . . . .
   Miss.Code Ann. § 7–9–13 (1972):
   It shall not be lawful for the state treasurer to pay or receive any money on account of the state but on the warrant or certificate of the auditor, issued pursuant to law.

4. There is no indication that the plaintiffs have attempted to take their valid judgment and levy on state property. However, the State does not argue that a judgment creditor *must* proceed in that fashion.

state funds were made pursuant to the Civil Rights Attorneys' Fee Awards Act of 1976, 42 U.S.C.A. § 1988. In providing statutory authority for the award of attorneys' fees to successful civil rights claimants, Congress was acting pursuant to the enforcement powers conferred on it by Section 5 of the Fourteenth Amendment. *See Hutto v. Finney*, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2575–76, 57 L.Ed.2d 522 (1978). *Hutto* made it clear that, by exercising its power under Section 5, Congress successfully abrogated the States' Eleventh Amendment immunity.[5] Thus, it is now beyond dispute that a federal district court has the authority to order that attorneys' fees be paid out of a state's treasury. The defendants do not disagree. Their position is, in effect: you can order us to pay, but you can't make us pay if we don't want to.

■■■ Neither *Hutto* nor the legislative history of the Act address the question of how to make an unwilling state or its officials satisfy a judgment for attorneys' fees. This is not surprising however, for it has never been the practice of Congress, when providing a statutory basis for the recovery of money damages or costs including attorneys' fees, to specify in the same legislation the appropriate means of enforcing the judgment. In all likelihood, Congress assumed it was unnecessary to consider the subject because the Federal Rules of Civil Procedure contains a provision for the execution of district court judgments, Fed.R. Civ.P. 69, and a provision authorizing the court to appoint an individual to do any act on behalf of a party who has refused to comply with the judgment himself, Fed.R. Civ.P. 70. We have been cited to no authority, nor have we found any, to indicate that these statutes do not apply to a state and its officials. *Cf. Gary W. v. State of Louisiana*, 601 F.2d 240, 246 (5th Cir. 1979). In addition, "[a] federal court's interest in orderly, expeditious proceedings," *Hutto v. Finney*, 437 U.S. at 696, 98 S.Ct. at 2577, justifies any reasonable action taken by the court to secure compliance with its orders. In *Hutto*, the Court remarked: "[A] federal court may treat a State like any other litigant when it assesses costs," 437 U.S. at 696, 98 S.Ct. at 2577, and "[w]hen a State defends a suit for prospective relief, it is not exempt from the ordinary discipline of the courtroom," *id.* at 695–96 n. 24, 98 S.Ct. at 2576 n. 24. We think this is adequate support for the proposition that, where a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance. "[F]ederal courts are not reduced to issuing [judgments] against state officers and hoping for compliance." *Id.* at 690, 98 S.Ct. at 2574. Only when the district court's response to the recalcitrance of a litigant is so inappropriate under the circumstances as to amount to an abuse of discretion will the Court of Appeals intervene. Here, the district court acted well within its authority to ensure compliance with its lawful orders. If statutory authority is needed for the court's actions, it may be found in Fed.R.Civ.P. 70.[6] The defend-

---

5. The *Hutto* court also found justification for imposing attorneys' fees on states in " 'the inherent authority of the Court in the orderly administration of justice as between all parties litigant.' " 437 U.S. at 696, 98 S.Ct. at 2577 (quoting *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 74, 48 S.Ct. 97, 99, 72 L.Ed. 168 (1927)).

6. Rule 70 states in pertinent part:

   If a judgment directs a party to . . . perform any . . . specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person . . . . The court may also in proper cases adjudge the party in contempt.

Fed.R.Civ.P. 70.

   In *Gary W. v. State of Louisiana*, 441 F.Supp. 1121 (E.D.La.1977), the plaintiffs, after unsuccessful attempts to collect on their judgment, petitioned the court for an order directing the Louisiana Department of Health and Human Resources to pay a judgment for attorneys' fees. In granting the order, Judge Rubin, sitting by designation on the district court, rejected the argument that Rule 70 may not be invoked to secure satisfaction of a judgment against the State of Louisiana for attorneys' fees. In dictum, Judge Rubin also rejected the argument that a garnishment order under Fed. R.Civ.P. 69 could not be granted because of a Louisiana statute prohibiting the satisfaction of a judgment against the State except from funds

ants have made it abundantly clear that they intend to resist the judgment until the bitter end. Given such obstinance, we think it beyond peradventure that the remedy fits the wrong.

■ We recognize that our discussion thus far does not directly address the defendants' argument that they cannot be required to violate the laws of Mississippi. The defendants misconceive the issue. As Judge Rubin of this Court, sitting by designation in *Gary W. v. State of Louisiana*, 441 F.Supp. 1121 (E.D.La.1977), responded when recently confronted with the identical argument: "The issue here is not one of judicial confrontation with the state. It is one of *implementation of a Congressional mandate.*" *Id.* at 1125 (emphasis added). The italicized words provide the key. Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiff for costs incurred in seeking redress. To strike down the order in this case because it conflicts with the laws of Mississippi would be no different than reversing a bare judgment for attorneys' fees. In either case, we would be allowing the state, by legislative action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove. Such a result would be contrary to the command of the Supremacy Clause of the United States Constitution.[7]

## II. *Interest on the Awards*[8]

Defendants challenge the authority of the District Court to add post-judgment interest on attorneys' fees and out-of-pocket costs. We believe that interest was properly awarded on attorneys' fees but not on costs.

### A.

Defendants vigorously contend that under this Court's decision in *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316 (5th Cir. 1978), we are precluded from awarding interest on attorney's fees and costs under the Civil Rights Attorneys' Fee Awards Act, 42 U.S.C.A. § 1988 (hereafter referred to as § 1988 or the Act).[9] Despite Judge Hill's strong expressions, see (dissent), pp. 1283–1284, we fully subscribe to principles of *stare decisis* and recognize that a decision by one panel of this Court is binding on other panels. E. g., *Trunkline Gas Co. v. Federal Energy Regulatory Commission*, 608 F.2d 582, 583 (5th Cir. 1979). But we are convinced that *Carpa* is not controlling on the question before us and we have not been unfaithful to it in deciding the way we do.

In *Carpa*, this Court held that under 15 U.S.C.A. § 15 (hereafter referred to as § 15), interest on attorneys' fees cannot be recovered. Section 15 provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." The Court's holding was a very narrow one. As the Court stated: "Our holding that attorneys' fees in antitrust cases are not to bear interest *implies nothing* whatsoever about the propriety of interest on attorneys' fees authorized by other statutes." 567 F.2d at 1323 (emphasis

---

appropriated for that purpose by the state legislature. In response to this argument, Judge Rubin stated that Louisiana could not simply elect not to pay an award made pursuant to an Act of Congress. Support was found in the Supremacy Clause of the Constitution. An appeal is now pending before this Court.

7. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S.Const. Art. VI, cl. 2.

8. Part II was authored by Judge Brown.

9. The Act provides:

In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

added). This language suggests in clear and unmistakable terms that each attorneys' fees statute must be carefully analyzed to determine whether interest should be awarded.

The Court in *Carpa* gave two reasons which together led to its conclusion. First, the Court pointed out that attorneys' fees are defined under § 15 as part of costs and that costs do not bear interest. Second, the Court emphasized the existence of treble damages under § 15 and suggested that the need for interest on attorneys' fees was therefore less critical in the anti-trust context than in other contexts.

In analyzing *Carpa*, Judge Hill in dissent reads the case as relying *exclusively* on the definition of attorneys' fees as part of costs. See (dissent), p. 1282. Since § 1988 also defines attorneys' fees as part of costs, see note 2, *supra*, Judge Hill reasons *ipso facto* that interest on attorneys' fees under § 1988 is not recoverable.

In our view, this reading of *Carpa* is misplaced, since it completely overlooks the Court's repeated emphasis on the treble damages provision in § 15. For instance, the Court in *Carpa* stated:

> In the absence of further Congressional guidance, *and in light of the fact that the provision of treble damages as well as attorneys' fees in the antitrust laws affords sufficient scope to the remedial purposes of encouraging private enforcement of the antitrust laws and facilitating the procuring of legal services,*[5] we see no basis for stretching the applicable statutory language to provide interest on the award of attorneys' fees to successful antitrust plaintiffs.

567 F.2d at 1322–23 (emphasis added). The footnote accompanying this passage elaborated:

> 5. We note in this regard that the treble damage provisions of the antitrust laws were designed in part to help finance litigation expenses in private antitrust suits. By creating the possibility of sizeable damage awards, Congress encouraged attorneys to try antitrust cases on a contingent fee basis.

*Id.* at 1323 n. 5. Later, the Court reemphasized:

> The language and history of a given statute might suggest that the public purposes underlying the statutory authority for attorneys' fees would be materially advanced by allowance of interest, *and the absence of a treble damage provision which complements the attorneys' fee provision would also require consideration.*

*Id.* at 1323 (emphasis added).

The *Carpa* Court's instruction to consider carefully the characteristics of the precise statute at issue would be completely undercut by Judge Hill's view that *Carpa* was based exclusively on the definition of attorneys' fees as part of costs. In our view, *Carpa* permits—indeed, compels—a comprehensive analysis of the statute at issue. With that in mind, § 1988 should be carefully analyzed.

### B.

Section 1988 was enacted by Congress in 1976 in response to the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which held that only Congress, not the Courts, could determine which laws were important enough to justify the awarding of attorneys' fees under the "private attorney general" principle. The Act is farreaching. It applies to suits for equitable relief or damages under the following statutes: 42 U.S.C.A. § 1981, forbidding discrimination by Government officials and private persons in contractual relations and used frequently to challenge discrimination in employment and use of recreational facilities; 42 U.S.C.A. § 1982, forbidding discrimination in real estate transactions; 42 U.S.C.A. § 1983, prohibiting denial of constitutional and civil rights by persons acting under color of state law; 42 U.S.C.A. § 1985, dealing with conspiracies to deny persons equal protection of the laws; 42 U.S.C.A. § 1986, providing a cause of action against certain individuals having power to prevent violations of § 1985 but

who do not do so; 42 U.S.C.A. § 2000d, *et seq.*, prohibiting discrimination based on race, color, or national origin in federally funded programs; and 20 U.S.C.A. § 1681, *et seq.*, prohibiting discrimination based on sex, blindness, or visual impairment in the use of federal funds in certain educational programs. The Act also authorizes attorneys' fees for prevailing taxpayers in civil suits by or on behalf of the United States under the Internal Revenue Code.

As the legislative history of § 1988 makes clear, Congress believed that the awarding of attorneys' fees is critical to the enforcement of the civil rights laws. The House Report, H.Rep.No.1558, 94th Cong., 2d Sess. (1976) (House Report), states: ·

> The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens. Although some agencies of the United States have civil rights responsibilities, their authority and resources are limited. In many instances where these laws are violated, it is necessary for the citizen to initiate court action to correct the illegality. Unless the judicial remedy is full and complete, it will remain a meaningless right. Because a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts. In authorizing an award of reasonable attorney's fees, [the proposed legislation] is designed to give such persons effective access to the judicial process where their grievances can be resolved according to law.

*Id.* at 1. Similarly, the Senate Report, S.Rep.No.94–1011, 94th Cong., 2d Sess. (1976) (Senate Report), *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5908 (hereafter referred to as U.S.C.C.A.) states:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it

costs them to vindicate these rights in court.

*Id.* at 2, USCCA at 5910. The Senate Report also quotes with approval the following language from the Supreme Court's opinion in *Newman v. Piggie Park*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265–66 (1968):

> When a plaintiff brings an action under [Title II] he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts. Congress therefore enacted the provision for counsel fees [42 U.S.C.A. § 2000a–3(b)] to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

Senate Report at 3, USCCA at 5910:

Very similar ideas were expressed at the debates on the legislation. As Congresswoman Holtzman stated:

> Plaintiffs who suffer discrimination and other infringements of their civil rights are usually not wealthy people. The organizations who have helped them bring their cases are frequently not well financed. The Justice Department does not have the resources to bring suit for every civil rights violation. Thus, many people, deprived of their civil rights, may not as a practical matter be able to do anything about it. It is not right to deny people who cannot afford to pay attorneys' fees the availability of justice through our courts.

122 Cong.Rec. H 12164 (daily ed. Oct. 1, 1976). And Congressman Seiberling, the original sponsor of legislation permitting the awarding of attorneys' fees in civil rights cases, stated:

> If the law does not authorize the awarding of attorneys' fees in meritorious civil rights cases, many potential

plaintiffs will be deterred from bringing deserving cases to remedy violations of the Constitution, especially those cases in which the appropriate relief is primarily equitable or injunctive rather than monetary.

*Id.* at H 12165.

Recognizing Congress' clear signals to apply the Act "broadly to achieve its remedial purpose," *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir. 1978), Courts have taken an extremely liberal view on nearly every interpretative question that has arisen thus far under § 1988. For example, the Courts have held that when a party files a case under a federal statute covered by § 1988 and also files a pendent state claim which is dispositive, the Act nonetheless entitles the prevailing party to attorneys' fees. See, e. g., *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir. 1977); *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977). Similarly, although the Act provides that the Court "in its discretion, *may* allow the prevailing party [attorneys' fees]" (emphasis added), Courts have held that unless the awarding of such fees would, because of special circumstances, be unjust, attorneys' fees should be awarded to the prevailing party as a matter of course. See, e. g., *Iranian Students Association v. Edwards*, 604 F.2d 352 (5th Cir. 1979); *Sethy v. Alameda County Water District*,

602 F.2d 894 (9th Cir. 1979); *Wharton v. Knefel*, 562 F.2d 550 (8th Cir. 1977); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977). Furthermore, it has been consistently held that the Act is to be retroactively applied. *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977); *Bond v. Stanton, supra.* And Courts have held that a party need not win on every issue to be a "prevailing party" under the Act. See, e. g., *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979); *Brown v. Culpepper, supra.* See generally Lipson, *Beyond Alyeska*—Judicial Response to the Civil Rights Attorneys' Fees Act, 22 St. Louis U.L.J. 243 (1978).

■ While admittedly the Courts in the cases just cited had somewhat more guidance from the legislative history than we have here, we believe that a liberal reading of the Act is also appropriate with respect to the awarding of interest on attorneys' fees. We do not mean to suggest that Congress explicitly intended that interest on attorneys' fees be awarded. Congress probably never specifically considered the question.[10] On the other hand, we do not believe that Congress intended to bar recovery of interest on attorneys' fees. And the awarding of interest is entirely consistent with the purpose of the Act: to ensure effective enforcement of the civil rights laws.[11]

---

**10.** However, contrary to the view of Judge Hill, see (dissent), p. 1281, it is at least arguable that by its cite to *Davis v. City of Los Angeles*, 8 EPD ¶ 9444, p. 5047 (C.D.Cal.1974), Congress intended that interest on attorneys' fees be awarded. In *Davis*, the Court awarded attorneys' fees to be made within thirty days and added that "interest shall not begin to accrue if Defendant County of Los Angeles makes the said payment within thirty days after entry of this Judgment. . . . ." 8 EPD ¶ 9444, at 5049. *Davis* is cited in the Senate Report along with several other cases as one in which "the appropriate standards . . . are correctly applied." Senate Report at 6, USCCA at 5913. And the Senate Report states that cases such as *Davis* "have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Id.*

**11.** In trying to make sense out of a statute, it is "appropriate to look beyond the words to the purpose of the act." *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15

L.Ed.2d 827, 833 (1966). See also *United States v. American Trucking Associations*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350 (1940). Moreover, when "flesh[ing] out the portions of the law with respect to which . . . congressional enactment [does not] offer conclusive guidance," it is "proper [to consider] what may be described as policy considerations." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539, 550 (1975). These cases recognize that Courts are occasionally required to fill in the interstices of a statutory scheme. As a body composed of mere mortals, Congress cannot be expected to address every issue which may possibly arise in a particular case. The Court in *Carpa* had precisely these sound considerations of statutory construction in mind when it declared that "the language and history of a given statute and the public purposes underlying the statutory authority for attorneys' fees" must be considered. 567 F.2d at 1323.

In analyzing the nature of the interest award, it must be understood that the awarding of interest is in no sense a windfall. Because a dollar today is worth more than a dollar in the future, "the only way [a party] can be made whole is to award him interest from the time he should have received the money." *Louisiana & Arkansas Railway Co. v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir. 1966). Indeed, this case dramatizes the need for interest on attorneys' fees if the attorneys for the prevailing party are to be adequately compensated. Most of the fees at issue in this case were awarded in 1973. Because of inflation, these awards are worth far less today than they were seven years ago. Had the awards been made in 1973, the attorneys could have been drawing interest on that amount for the last seven years.[12]

The appropriateness of awarding interest on attorneys' fees in the civil rights context becomes even clearer when § 1988 is examined in light of the precise considerations expressed in *Carpa*. As stated above, *Carpa* relied on the existence of treble damages and on the definition of attorneys' fees as part of costs. Section 1988 is distinguishable on both bases.

First, there are no treble damage provisions under any of the civil rights statutes covered by § 1988. Indeed, as the legislative history discussed above emphasizes, many of the litigants in civil rights cases have little or no money with which to hire a lawyer. Frequently the litigant is unable to obtain *any* damages under the applicable statute but can seek only injunctive or declaratory relief. In Senate debate on the legislation, Senator Kennedy drew a sharp distinction between the civil rights and anti-trust contexts:

> The lawyer who undertakes to represent a client alleging a violation of the civil rights statutes covered by this bill

faces significant uncertainty of payment, even where he has a strong case. For there is often important principles to be gained in such litigation, and rights to be conferred or enforced, but just as often no large promise of monetary recovery lies at the end of the tunnel. So *civil rights cases—unlike tort or antitrust cases—do not provide the prevailing plaintiff with a large recovery from which he can pay his lawyer.* That is why Congress has already decided in many recent civil rights laws to include provisions for recovery of attorneys' fees, in order to insure that the rights guaranteed by the laws are not lost through the *inability of those who are supposed to benefit to obtain judicial enforcement of those rights.*

122 Cong.Rec. S 17052 (daily ed. Sept. 29, 1976) (emphasis added). We can think of no type of litigation where "the absence of a treble damage provision which complements the attorneys' fee provision," *Carpa, supra,* 567 F.2d at 1323, is more significant than in the civil rights context.

Second, while it is true that § 1988 also defines attorneys' fees as part of costs, see note 9, *supra,* the legislative history makes clear that this was done for one reason and one reason only: to ensure that the Eleventh Amendment is no bar so that these fees are recoverable against Government officials acting in their official capacity. As this Court stated in *Morrow v. Dillard,* 580 F.2d 1284, 1299 n. 18 (5th Cir. 1978):

> The Senate Report contemplated that by defining fees as costs there would be no problem in awarding fees against State officers acting in their official capacities . . . . .

See Senate Report at 5, USCCA at 5913; House Report at 7. In the anti-trust context, by contrast, the Court in *Carpa* could point to nothing to explain Congress's inclu-

---

12. The case before us is in no way atypical. The law books are filled with civil rights cases extending over decades. For a classic example, see *Singleton v. Jackson Municipal Separate School Dist.,* 348 F.2d 729 (5th Cir. 1965) (Singleton I); 355 F.2d 865 (5th Cir. 1966) (Singleton II); 419 F.2d 1211 (5th Cir.) (en banc)

(Singleton III) *rev'd,* 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477, *cert. denied,* 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970); 426 F.2d 1364 (5th Cir. 1970) (Singleton IV); 430 F.2d 368 (5th Cir. 1970) (Singleton V); 432 F.2d 927 (5th Cir. 1970) (Singleton VI); 509 F.2d 818 (5th Cir. 1975) (Singleton VII).

sion of attorneys' fees as part of costs. Certainly Congress was not trying to make clear that attorneys' fees could be assessed against state and local Governments, since Congress intended that the anti-trust laws be inapplicable to suits against Government entities.[13]

Thus, in analyzing § 1988 and its inclusion of attorneys' fees as part of costs, Congress' concern about the possible immunity of Government officials must be kept clearly in mind. This fact rebuts the assumption of Judge Hill that Congress intended to define attorneys' fees as part of costs for all purposes.

To read *Carpa* as Judge Hill does would be to place Congress in a no win situation. If Congress specifies attorneys' fees as part of costs, then interest cannot be awarded, and in cases such as this, attorneys' fee awards will be inadequate. On the other hand, if Congress does not specify attorneys' fee awards as part of costs, it runs the risk that such fees will not be assessed against Government officials acting in their official capacity.

In addition, Judge Hill's view—that *Carpa* requires rejection of interest on attorneys' fees whenever they are defined as part of costs—would foreclose the possibility of recovering interest on attorneys' fees under a variety of other statutes. As of 1977, there were at least 75 statutes enacted by Congress authorizing attorneys' fees. See Berger, Court Awarded Attorneys' Fees: What Is "Reasonable"? 126 U.Pa.L. Rev. 281, 303–04 n. 104 (listing statutes).[14]

---

**13.** See, e. g., *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). While the "state action" doctrine has been undercut recently, see, e. g., *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 402, 98 S.Ct. 1123, 1131, 55 L.Ed.2d 364, 376 (1978), these recent inroads do not undercut *Parker* in any manner relevant to this issue.

**14.** For convenience, we reproduce the author's exhaustive collection of the statutes:

Federal Contested Elections Act § 17, 2 U.S.C. § 396 (1970); Act of Nov. 21, 1974 (Freedom of Information Act amendments) § 1(b)(2), 5 U.S.C. § 552(a)(4)(E) (Supp. V 1975); Privacy Act of 1974 § 3, 5 U.S.C. § 552a(g)(2)(B) (Supp. V 1975); Government in the Sunshine Act § 3, 5 U.S.C.A. § 552b(i) (Supp. 1977); Workmen's Compensation Acts § 208, 5 U.S.C. § 8127(b) (1970); Commodity Futures Trading Commission Act of 1974 § 106, 7 U.S.C. §§ 18(f), (g) (Supp. V 1975); Packers and Stockyards Act, 1921 § 309, 7 U.S.C. § 210(f) (1970); Perishable Agricultural Commodities Act, 1930 § 7, 7 U.S.C. §§ 499g(b), (c) (1970 & Supp. IV 1973); Agricultural Fair Practices Act of 1967, § 6, 7 U.S.C. §§ 2305(a), (c) (1970); Plant Variety Protection Act § 125, 7 U.S.C. § 2565 (1970); Bankruptcy Act § 1, 11 U.S.C. §§ 205, 641, 643, 644 (1970); Home Owners Loan Act of 1933, 12 U.S.C. § 1464(d)(8) (1970), *as amended by* Financial Institutions Supervisory Act of 1966, Pub.L. No. 89–695, § 102(a), 80 Stat. 1036 (1966); National Housing Act, 12 U.S.C. § 1730(m), *as amended by* Financial Institutions Supervisory Act of 1966, Pub.L. No. 89–695, § 102(a), 80 Stat. 1036 (1966); Federal Credit Union Act, 12 U.S.C. § 1786(*o*) (1970), *as amended by* Act of Oct. 19, 1970, Pub.L. No. 91–468, § 1(3), 84 Stat. 1010 (1970); Federal Deposit Insurance Act, 12 U.S.C. § 1818(n) (1970), *as amended by* Financial Institutions Supervisory Act of 1966, Pub.L. No. 89–695, § 202, 80 Stat. 1036 (1966); Bank Holding Company Act Amendments of 1970 § 106(e), 12 U.S.C. § 2607(d) (Supp. V 1975); Clayton Act § 4, 15 U.S.C. § 15 (1970); Clayton Act § 4C, 15 U.S.C.A. § 15c (Supp.1977), *as amended by* Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub.L. No. 94–435, § 301, 90 Stat. 1394; Clayton Act § 16, 15 U.S.C.A. § 26 (1976), *as amended by* Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub.L. No. 94–435, § 302(3), 90 Stat. 1396; Federal Trade Commission Act, 1975 Amendments § 202(a), 15 U.S.C. § 57a(h) (Supp. V 1975); Unfair Competition Act § 801, 15 U.S.C. § 72 (1970); Securities Act of 1933 § 11, 15 U.S.C. § 77k(e) (1970); Trust Indenture Act of 1939 § 323, 15 U.S.C. § 77www(a) (1970); Securities Exchange Act of 1934 §§ 9, 18, 15 U.S.C. §§ 78i(e), 78r(a) (1970); Jewelers' Liability Act (Gold and Silver Articles) § 1(b), 15 U.S.C. § 298(b), (c), (d) (1970); National Traffic and Motor Vehicle Safety Act of 1966 § 111, 15 U.S.C. § 1400 (1970); Truth in Lending Act § 408(a), 15 U.S.C. § 1640(a) (Supp. V 1975); Consumer Leasing Act of 1976 § 3, 15 U.S.C.A. § 1667b (Supp.1977); Fair Credit Reporting Act § 601, 15 U.S.C. §§ 1681n, 1681*o* (1970); Equal Credit Opportunity Act § 503, 15 U.S.C. § 1691(e) (Supp. V 1975), *redesignated as* § 1691e(d) *and amended by* Equal Credit Opportunity Act Amendments of 1976, Pub.L. No. 94–239, § 6, 90 Stat. 253 (1976); Motor Vehicle Information and Cost Savings Act §§ 109, 409, 15 U.S.C. §§ 1918, 1989(a)(2) (Supp. V 1975); Consumer Product Safety Commission Improvements Act of 1976 §§ 10(a), (b), 15

A large number of these statutes define attorneys' fees as part of costs. See, e. g., Federal Contested Elections Act, § 17, 2 U.S.C.A. § 396; Freedom of Information Act Amendments, § 1(b)(2), 5 U.S.C.A. § 552(a)(4)(E); Privacy Act of 1974, § 3, 5 U.S.C.A. § 552a(g)(2)(B); Government in the Sunshine Act, § 3(a), 5 U.S.C.A. § 552b(i); Magnuson-Moss Warranty—Federal Trade Improvement Act, § 110(d), 15 U.S.C.A. § 2310(d); Civil Rights Act of 1964

U.S.C.A. §§ 2059(e), 2060(c) (Supp.1977); Consumer Product Safety Act §§ 23, 24, 15 U.S.C. §§ 2072, 2073 (Supp. V 1975), *as amended by* Consumer Product Safety Commission Improvements Act of 1976, Pub.L. No. 94–284, §§ 10(c), (d), 90 Stat. 503 (1976); Hobby Protection Act § 3, 15 U.S.C. § 2102 (Supp. V 1975); Magnuson-Moss Warranty—Federal Trade Improvement Act § 110(a)(5), 15 U.S.C. § 2310(d) (Supp. V 1975); Copyrights Act § 1, 17 U.S.C. § 116 (1970), *redesignated as § 505 and amended by* Pub.L. No. 94–553, § 101, 90 Stat. 2541 (1976); Organized Crime Control Act of 1970 § 901(a), 18 U.S.C. § 1964(c) (1970); Omnibus Crime Control and Safe Streets Act of 1968 § 802, 18 U.S.C. § 2520 (1970); Emergency School Aid Act § 718, 20 U.S.C. § 1617 (Supp. V 1975); American-Mexican Chamizal Convention Act of 1964 § 5, 22 U.S.C. § 277d–21 (1970); International Claims Settlement Act of 1949 § 4, 64 Stat. 13 (1950) (current version at 22 U.S.C. § 1623(f) (1970)); Act of June 25, 1948 (Federal Tort Claims), ch. 646, 62 Stat. 984 (1948) (current version at 28 U.S.C. § 2678 (1970)); Norris-LaGuardia Act § 7, 29 U.S.C. § 107(e) (1970); Fair Labor Standards Amendments of 1974, § 6(d)(1), 29 U.S.C. § 216(b) (Supp. V 1975); Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C. § 1132(g) (Supp. V 1975); State and Local Fiscal Assistance Amendments of 1976 § 7(b), 31 U.S.C.A. § 1244(e) (Supp.1977); Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 §§ 13, 15, 33 U.S.C. §§ 928, 933 (Supp. V 1975); Federal Water Pollution Control Act Amendments of 1972 §§ 505, 507, 33 U.S.C. §§ 1365(d), 1367(c) (Supp. V 1975); Marine Protection, Research, and Sanctuaries Act of 1972 § 105, 33 U.S.C. § 1415(g)(4) (Supp. V 1975); Deepwater Port Act of 1974 § 16(d), 33 U.S.C. § 1515(d) (Supp. V 1975); Patent Infringement Act § 1, 35 U.S.C. § 285 (1970); Safe Drinking Water Act § 1449(d), 42 U.S.C. § 300j–8 (Supp. V 1975); Social Security Act § 206, 42 U.S.C. § 406 (1970); Clean Air Act § 12a, 42 U.S.C. § 1857h–2(d) (1970); Voting Rights Act Amendments of 1975 § 402, 42 U.S.C. § 1973*l* (e) (Supp. V 1975); Civil Rights Attorney's Fees Awards Act of 1974 § 2, 42 U.S.C.A.

§§ 204, 706, 42 U.S.C.A. §§ 2000a–3(b), 2000e–5(k). We cannot believe that the Court in *Carpa*, with its emphatic language that each act must be carefully considered, intended to decide the question of interest on attorneys' fees with respect to these and many other statutes.[15]

█ In sum, we believe that § 1988 should be liberally construed to permit the awarding of interest on attorneys' fees.[16]

§ 1988 (1976); Civil Rights Act of 1964 §§ 204, 706, 42 U.S.C. §§ 2000a–3(b), 2000e–5(k) (1970); Atomic Energy Act of 1954 § 1, 42 U.S.C. § 2184 (1970); Fair Housing Act of 1968 § 812, 42 U.S.C. § 3612(c) (1970); Crime Control Act of 1976 § 122(b), 42 U.S.C.A. § 3766(c)(4)(B) (1976); Noise Control Act of 1972 § 12, 42 U.S.C. § 4911(d) (Supp. V 1975); National Mobile Home Construction and Safety Standards Act of 1974 § 613, 42 U.S.C. § 5412(b) (Supp. V 1975); Railway Labor Act § 3, 45 U.S.C. § 153(p) (1970); Shipping Act, 1916 § 30, 46 U.S.C. § 829 (1970); Communications Act of 1934 §§ 206, 407, 47 U.S.C. §§ 206, 407 (1970); Act of Mar. 3, 1887 (aliens holding land) § 6, 48 U.S.C. § 1506 (1970); Interstate Commerce Act §§ 8, 15, 16, 222, 308, 417, 49 U.S.C. §§ 8, 15(9), 16(2), 322(b), 908(b), 1017(b) (1970); Natural Gas Pipeline Safety Act Amendments of 1976 § 8, 49 U.S.C.A. § 1686(e) (1976); Housing and Rent Act of 1947, § 205, 61 Stat. 199 (1947) (repealed 1948); Defense Production Act of 1950, § 409, 64 Stat. 811 (1950) (repealed 1951).

**15.** Indeed, Judge Hill seems to suggest that attorneys' fees, no matter how they are defined, belong to that enigmatic category of costs. See (dissent), p. 1282. That means that, given Judge Hill's reading of *Carpa*, interest cannot be recovered on attorneys' fees under any of the statutes listed in note 14, *supra*. Such reasoning stands *stare decisis* on its head and permits *Carpa*—an extremely narrow opinion—to do exactly what the Court did not want to do: resolve the issue of interest on attorneys' fees under the myriad other attorneys' fee provisions enacted by Congress.

**16.** We are not troubled by this Court's Order in *Rainey v. Jackson State College*, 591 F.2d 1002 (5th Cir. 1979). The cryptic Order "denied" could be based on at least three separate grounds, only one of which involves the precise issue presented here. For example, the parties in *Rainey* seeking interest on attorneys' fees did so very late in the game, after the opinion for the Court approving the awarding of attorneys' fees had been written. The Court may

Such a liberal approach finds general support both in the legislative history of § 1988 and in the various cases interpreting it. Nor do we believe that *Carpa* compels a contrary result. Because the *Carpa* decision was a very narrow one, and because the decision today is likewise a very narrow one, we disagree with Judge Hill's suggestion ((dissent), p. 1283) that to award interest on attorneys' fees under § 1988, *en banc* reconsideration of *Carpa* is essential. With twenty-five Judges on this Court, it hardly serves good sound administration of justice to call an *en banc* session to reconsider a narrow decision arising under the antitrust laws that is readily distinguishable from the facts presented here.

■ Accordingly, we affirm that part of the District Court's opinion holding that Appellees are entitled to interest on the initial award of $41,750 for attorneys' fees and on the supplemental award of $2,562.50 for time spent on appeal. We also hold, however, that the District Court erred in awarding interest on the out-of-pocket costs of $10,986.05. See *supra* at 1270 n. 2.[17]

## Conclusion

This case has flip-flopped from the District Court to this Court to the District Court and to this Court again for almost a decade. In 1972, the District Court held that the operation of Parchman Penitentia-

---

well have denied the motion for interest simply because it came too late.

**17.** While Appellees seek affirmance of the District Court decision in all respects, they virtually concede that the awarding of interest on out-of-pocket costs was not proper. Their analysis rests on the argument that attorneys' fees should not be treated the same as other costs. E. g., Appellees' Brief, at 29 ("Congress' determination . . . to award attorney's fees 'as part of costs' (42 U.S.C. § 1988) does not indicate any intent to bring these attorney's fees awards under the general rule against allowing interest on taxable costs of court."). Although there is little case law on the question, the view that out-of-pocket costs (as opposed to attorneys' fees) do not bear interest appears firmly established in our jurisprudence and Courts either explicitly or implicitly have accepted this principle. E. g., *Jesko v. American-First Title & Trust Co.*, 603 F.2d 815, 820 n. 11 (10th Cir. 1979); *Carpa, supra*, 567 F.2d at 1322; *Duffer v. American Home Assurance Co.*, 512 F.2d 793, 800 (5th Cir. 1975); 20 C.J.S. Costs § 190, p. 422 (and cases cited therein).

Judge Hill will not concede that the cases cited above support the position that out-of-pocket costs do not bear interest, (dissent), pp. 1282 1283 even though *he* reads *Duffer* and *Carpa* as holding that costs do not bear interest, p. 1282, and even though Appellees clearly concede in their brief that this principle of law is well established.

As Appellees point out, there are several distinctions between attorneys' fees and out-of-pocket costs. Whereas out-of-pocket costs are routinely awarded upon submission of a bill of costs, a much more elaborate documentation process is required with respect to attorneys' fees. And whereas Court costs may only be taxed after entry of final judgment, attorneys' fees may be assessed even if an action is settled and no final judgment is entered. Indeed, it is interesting that even though § 1988 defines

attorneys' fees as part of costs, Courts have, for purposes of analysis, consistently separated attorneys' fees and other costs. See, e. g., *Morrow v. Dillard, supra*, 580 F.2d at 1296 (Part IV of opinion contains heading "Attorney's Fees and Costs"); *McPherson v. School District # 186*, 465 F.Supp. 749, 763 (S.D.Ill. 1978) (immediately under the heading "Costs," the opinion begins "In addition to attorneys' fees, the plaintiffs' attorneys are seeking to have their out-of-pocket expenses assessed against the defendants as costs."); *Alsager v. District Court of Polk County, Iowa*, 447 F.Supp. 572, 580 (S.D.Iowa 1977) (holding that "counsel will also be permitted, in addition to attorney fees, $2,000.00 in costs."); *Dawson v. Pastrick*, 441 F.Supp. 133, 143 (N.D.Ind.1977) (Court's heading reads "Costs and Attorneys' Fees" and Court states that plaintiffs have asked for "costs and reasonable attorney fees").

As we have already stated, by defining attorneys' fees as part of costs, Congress was merely concerned with problems of immunity and did not intend for attorneys' fees to be treated as part of costs for all purposes. Moreover, the legislative history of § 1988 emphasizes the need in civil rights cases for adequate attorneys' fee awards. On the other hand, there is nothing in the legislative history of § 1988 which even remotely suggests that the treatment of out-of-pocket costs should in any way change as a result of the enactment of § 1988. While we sympathize with Appellees' claim for interest on costs, we believe that Congress must provide at least some indication of its intent to abrogate the traditional rule against awarding interest on out-of-pocket costs, or at least express a strong and clear intent that costs, like attorneys' fees, must be liberally awarded to ensure effective enforcement of the civil rights laws.

ry infringed upon the constitutional rights of its inmates. 349 F.Supp. 881 (N.D.Miss. 1972). We affirmed the District Court. 501 F.2d 1291 (5th Cir. 1974). In 1973, the District Court awarded attorneys' fees and costs, and we affirmed. 489 F.2d 298 (5th Cir. 1973). Two Supreme Court cases, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* led this Court (sitting en banc) to vacate and remand for reconsideration of attorneys' fees in light of these cases. 522 F.2d 81 (5th Cir. 1975). The District Court reassessed attorneys' fees, 70 F.R.D. 341 (N.D. Miss.1976), and this Court affirmed the judgments (but reversed the denial of attorneys' fees for appellate proceedings and remanded on that question). 559 F.2d 244 (5th Cir. 1977). In the 1977 Fifth Circuit case, we remarked: "This is, we hope, the last appearance of this lengthy litigation challenging prison conditions in the Mississippi State Penitentiary." 559 F.2d at 241.

But the last appearance it was not. The defendants tried one last desperate effort: they refused to pay over the attorneys' fees, raising Eleventh Amendment arguments that, as Part I points out, are so clearly meritless as to be frivolous. Yet, recognizing that they were bound to lose on those arguments, the defendants also challenged the awarding of interest on attorneys' fees and out of pocket costs. By Part II, the Court now rejects the argument that interest on attorneys' fees was not proper.[18]

And we once again express our hope that with this opinion,[19] the long history of this litigation involving conditions at the Mississippi State Penitentiary has come to an end.

AFFIRMED IN PART; REVERSED IN PART.

JAMES C. HILL, Circuit Judge, dissenting in part:

There is no doubt that the equitable considerations weigh overwhelmingly in favor of the plaintiffs and their attorneys. The obstinance of the defendants has resulted in the two awards, one 7 years old, remaining unpaid to date. The bulk of the fees awarded reflect rates for attorneys' services prevailing in 1973. Inflation has diminished drastically the value of the awards. If the judgment had been paid promptly, the attorneys would have had the use of the money since 1973 and presumably could have earned a significant amount of interest on the money since that time. The same holds true for the substantial out-of-pocket costs which have been incurred since the start of this litigation more than 9 years ago. Defendants, on the other hand, get a windfall. They have been unrestricted in their use of the money. Even assuming earnings of only 5% per annum, they could have by now recovered a substantial portion of the amount they ultimately will have to pay. Their obstinance has indeed been profitable.

I wholeheartedly join with the majority in the feeling that the law ought to permit these plaintiffs to recover interest on the attorneys' fees awarded so long ago and since stubbornly withheld from them by these defendants. Nevertheless, I must dissent from the holding that attorneys' fees, although a part of costs, bear interest. The decision of a panel of this Court in *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316 (5th Cir. 1978) is, in my view, dispositive of the issue. As such, the majority's holding flies in the face of the doctrine of *stare decisis,* represented here by the rule that one panel of this Court must abide the decision of a prior panel. This abrupt departure comes at a most inappropriate time in our history.

Although I am of the opinion that *Carpa* prevents the awarding of interest on out-of-pocket expenses, I must dissent from the majority's holding disallowing interest on those costs. The majority's partial recognition of *Carpa* to deny interest on money actually paid out long ago cannot be made

---

**18.** Obviously attorneys' fees (to be fixed by the District Court on remand) are allowable for successfully resisting this appeal on all but the issue of interest on costs.

**19.** Judge Hill, of course, continues in his view that en banc court action is required.

to dove tail with its having kicked off the *Carpa* traces as to attorneys' fees.

## I. *Attorneys' Fees*

Although several courts have either expressly or impliedly approved the general proposition that interest on fee awards is permissible, *see City of Detroit v. Grinnell Corp.*, 575 F.2d 1009, 1010 (2d Cir. 1978); *Perkins v. Standard Oil*, 487 F.2d 672 (9th Cir. 1973); *Holly v. Chasen*, No. 75–2116 (D.D.C. Feb. 2, 1979); *McPherson v. School District # 186*, 465 F.Supp. 749, 765 (D.Ill. 1978); *Cleverly v. Western Electric Co.*, 450 F.Supp. 507, 512 (W.D.Mo.1978), *aff'd*, 594 F.2d 638 (8th Cir. 1979), a panel of this Court recently came to the contrary conclusion. *Carpa* was a treble-damage action brought under the antitrust laws. The plaintiffs were awarded attorneys' fees plus 6% interest. The court framed the issue before it as follows: "whether the district court may award interest on attorneys' fees when the fees are treated as costs." 567 F.2d at 1321. In reversing the award of interest, the panel relied heavily on the fact that the statutory provision authorizing fee awards, 15 U.S.C.A. § 15, categorizes fees as part of costs.[1] *Id.* at 1322. No authority for awarding interest on costs was found,[2] there was nothing in the language of the statute to indicate that interest on costs was recoverable, and the legislative history of the statute was silent on the question. *Id.*

The statute under consideration in this case, the Civil Rights Attorneys' Fees Awards Act, also treats attorneys' fees as part of costs: "[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988. As in *Carpa*, the legislative history of the Act is silent on the question of interest, and there is noth-

ing in the language of the statute to indicate that Congress intended that attorneys' fees bear interest.[3]

The majority criticizes this reading and application of *Carpa* as "[relying] *exclusively* on the definition of attorneys' fees as part of costs." At 1273, *supra*. In the majority's view, *Carpa* only disposed of the interest issue in the context of the antitrust fee award provision. Having so freed itself of the obligation to apply *Carpa* to this case, the majority proceeds to analyze the Act's fee provision to determine whether the relevant policy considerations militate in favor of allowing interest to be awarded. In this vein, three significant characteristics of civil rights cases are noted. First, civil rights claimants often do not have the money to hire an attorney. Second, unlike the antitrust laws, the civil rights statutes do not provide for treble damage awards from which a plaintiff might draw on to help compensate his attorney. Third, since the relief in civil rights cases frequently is injunctive only, normally there is no fund from which to supplement court-awarded fees. With these observations I have no argument. It is clear that these factors led Congress to the conclusion that a fee award provision was necessary to ensure that private citizens be able to obtain counsel to assist them in seeking redress for violations of their civil rights. Unfortunately, the question before this panel is not whether attorneys' fees should be awarded; rather, the question is whether the fees that were awarded should bear interest. I have little doubt that Congress would have authorized interest had they thought of it. But, as the majority concedes, Congress never considered the issue. Since Congress did not manifest an intent one way or the other, the issue is one for the judiciary to decide.

---

1. 15 U.S.C.A. § 15 provides for the recovery of "the cost of suit, including a reasonable attorney's fee."

2. The one case which had been decided prior to *Carpa, Perkins v. Standard Oil*, 487 F.2d 672 (9th Cir. 1973), was rejected by the panel because it was "based on an erroneous view of the law." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1322 (5th Cir. 1978).

3. One district court case in which interest was allowed on an award of fees is cited in the Senate Report accompanying the Act. S.Rep. No.94–1011, 94th Cong., 2d Sess. 6 (1976). That case, however, was cited only as an example of the proper way of calculating the amount of the award. *Id.* (citing *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 944 (C.D.Cal.1974)).

As in any other case where we are not compelled to a result by the action or inaction of Congress, our first duty is to determine whether we are writing on a clean slate. My disagreement with the majority stems from my belief that we are not writing on a clean slate. While I agree that the result reached by the majority is a desirable one, I do not feel that we are free to reach it.

I begin with the proposition that attorneys' fees, although different than other costs, are nevertheless a part of the costs of a lawsuit. A reading of the majority opinions in *Hutto v. Finney*, 437 U.S. 678, 695–98, 98 S.Ct. 2565, 2576–77, 57 L.Ed.2d 522 (1978) and *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247–57, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975), leaves one with the unmistakable impression that attorneys' fees are, and have long been considered, a part of litigation costs. Thus, the majority's belief that Congress categorized fees as part of costs to ensure that the states would not be insulated by the Eleventh Amendment is irrelevant. Whether Congress was or was not correct in the belief that the terminology used would be dispositive of the Eleventh Amendment question does alter the fact that attorneys' fees are part of costs.

The next question—whether costs bear interest—was, as I have already stated, the question before the *Carpa* panel. The basis of that panel's holding is clear from its citation of *Duffer v. American Home Assurance Co.*, 512 F.2d 793 (5th Cir. 1973). *Duffer* was a diversity case in which the plaintiff was awarded attorneys' fees under the authority of a Texas insurance statute. The statute stated that "attorney's fee shall be taxed as a part of the costs in the case." *Id.* at 800. The district court included the fee award in the damage judgment and assessed interest on the whole amount. This Court held that the fees should have been taxed separately and no interest awarded thereon. It is clear that the decision was based on the fact that attorneys' fees are part of costs and, as such, do not bear interest. At least that is the way the *Carpa* panel read *Duffer*:

[I]t is somewhat instructive to note that faced with a statutory language similar to 15 U.S.C. § 15, and without any controlling precedent to bind it, the court held that *attorneys' fees are an item of costs and as such do not bear interest.* 567 F.2d at 1322 (emphasis added).

In my view, the four opinions discussed above preclude this three-judge panel from deciding the desirability of allowing interest on attorneys' fees awarded under the Act.

## II. *Out-of-Pocket Costs*

The question whether interest should be awarded on out-of-pocket costs is disposed of by the majority all too easily. The footnote accompanying the one-sentence textural discussion of out-of-pocket expenses explains that "firmly established in our jurisprudence" is the principle that such costs do not bear interest. At 1279, *supra*. The three cases cited by the majority—*Carpa, Duffer*, and *Jesko v. American-First Title & Trust Co.*, 603 F.2d 815, 820 n. 11 (10th Cir. 1979)—simply do not support that statement. There is nothing in any of those opinions to the effect that some costs are interest bearing while others are not.

Judge Brown's eloquent presentation of the Act's legislative history demonstrates that Congress perceived a great need to authorize awards of attorneys' fees. Contrary to the apparent assumption of the majority, I do not believe that anything in the legislative history discloses that Congress was only luke warm in its decision that a prevailing plaintiff also should be awarded his out-of-pocket costs. There is nothing to suggest that Congress considered attorneys' fees more important or less important than other litigation expenses.

In my view, there is more reason to allow interest on out-of-pocket expenses than on attorneys' fees. The label "out-of-pocket" is most revealing. Such costs include filing fees, court reporter fees and the like. Unlike attorneys' fees, these are bills that had to be paid years ago to keep the lawsuit alive. Were I not of the opinion that *Carpa* prevents us from allowing interest on any

part of costs, I would not hesitate to hold that these plaintiffs should have interest on their out-of-pocket costs.

### III. *Stare Decisis*

The respective positions of the three judges on this panel can be stated as follows:

### The Majority

"I cannot bear to be told when an argument has been addressed to me by which I am not convinced, that there is a case decided which I am bound to follow." *In re Holmes*, 60 C.D. 269 (1890).

### The Dissent

"My duty is, as a Judge, to be governed by fixed rules and former precedents." *Brownlow v. Egerton*, 23 L.J.Rep. part 5, ch. 364 (1854).

### The Panel

"I have often thought since that there is sound sense in what was once said by the late Lord C. J. Eyre, that the sooner a bad precedent was gotten rid of, the better." *King v. Stone*, 1 East 648 n. (a) (1801).

Were I writing on a clean slate, I would be hard pressed to hold that costs do not bear interest. Outside this Circuit, there is no authority supporting such a holding. As noted above, most federal courts have found no barrier to awarding interest on costs. Nonetheless, in our Circuit one panel cannot overrule a prior panel decision, and the question before this panel is controlled by *Carpa. See United States v. Lewis*, 475 F.2d 571, 574 (5th Cir. 1973).[4]

The majority's departure from the doctrine of *stare decisis* presents a grave threat to the orderly administration of justice in this Circuit at a time in history when adher-

ence is of particular and vital importance. This court has been restructured in a fashion unprecedented in the history of the judiciary. With the implementation of the Omnibus Judgeship Bill of 1978, Pub.L. 95–486, 92 Stat. 1629 (1978), this Court is now made up of twenty-six active judges and ten senior judges, most of whom sit regularly on our panels. Whether or not such a body can fairly and efficiently articulate, in one voice, the law affecting nearly 50 million people remains to be seen. I submit that our success may in large part depend on our adherence to the doctrine of *stare decisis*. If we give only lip service to the rule that one panel is bound by prior panel decisions, we run the risk of transforming what has heretofore been an orderly institution into an inconsistent, unpredictable body, made up of three-judge panels that resemble waterbugs chasing each other around and around the surface of a summer pond.

The issue of interest on costs should be presented to the entire Court on a proposal that it be considered *en banc*. Should a majority of the Court conclude that *Carpa* was an unwise decision, these long persevering plaintiffs can receive a full loaf instead of the half loaf given them by the majority. More importantly, it would give the full Court the opportunity to establish a general rule for the scores of federal statutes that authorize awards of attorneys' fees and out-of-pocket expenses. If we approach this problem on a case-by-case basis, we can expect to be deluged with litigation over the more than 75 statutes listed in footnote 14 of the majority opinion. *Cf. Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 2595, 61 L.Ed.2d 235 (1979) (Blackmun, J., dissenting).

If it be the will of the Court, the correct rule can be announced *en banc*. Of course, if a majority of the Court does not wish the

---

**4.** Defendants argue that even if we are not bound by *Carpa* we are still precluded, by *Rainey v. Jackson State College*, 591 F.2d 1002 (5th Cir. 1979), from affirming the award of interest. The cited decision was an order of a panel of this Court denying a motion for post-judgment interest on an award of attorneys' fees. Because the order was not accompanied

by a written opinion, it is not clear that *Rainey* alone would preclude us from affirming the award of interest. Even if the panel in *Rainey* did base its decision on *Carpa*, an *en banc* decision declaring that costs bear interest would eliminate any precedential value that *Rainey* now carries.

*Carpa* rule reconsidered, then it should not be, for it is the Court's decision to make. It would be a gross departure from good judicial practice for a three-judge panel to alter an established rule merely because its members fear that the full court would not agree with its views.